EASTON and others v. HOUSTON & T. C. RY. Co. and others,[1] (MARTIN, Intervenor.)

*(Circuit Court, E. D. Texas.  November, 1887.)*

1. MASTER AND SERVANT—NEGLIGENCE—FELLOW-SERVANT.

The petitioner was a section hand in the employ of a receiver of a railroad, and, while returning to a section-house on a hand-car, it was run into by a train in charge of an engineer in the employ of the receiver, and petitioner was injured.  *Held*, that as the petitioner at the time of the injury was running a car on the track, he was brought into direct relations with the employes running the train, and they were fellow-servants, respectively charged with the ordinary risks of each other's negligent acts.[2]

2. NEGLIGENCE—ACTION IN FEDERAL COURT—LAW GOVERNING.

Petitioner sought to recover damages for injuries in the United States court against a receiver of a railroad appointed by the court.  *Held*, that the laws of the state where the action arose would govern as to defendant's liability.

SABIN, J., dissents.

On Exceptions to Master's Report.

Henry Martin was allowed to intervene in this case to claim damages from the receivers for injuries inflicted by a collision upon their railway. The receivers demur and deny, and the matter was referred to a master, who reported that he found that petitioner at the time of the accident was in the employ of the receivers as a day-laborer or section hand; that between 7 and 8 o'clock on the morning of the fourteenth of July, 1886, the petitioner, with three other section hands and the master in charge of his section, in due course of employment, were traveling on a hand car over said section, returning to the section-house of said section from the city of Austin; that when about 200 yards distant from said section-house, approaching it, the hand car upon which they were traveling collided with a locomotive running in the opposite direction, and on its way to said Austin, and then being operated by the employes of said receivers, likewise in due course of employment; that the point where said collision occurred was in a curve of said railway; that the view of the track between the hand car and the locomotive was obstructed by a growth of trees near the track, and upon the inner side of the curve, so that those upon the hand car could not see the approaching locomotive until it was within 400 or 480 feet of them, and those operating the locomotive could not see the hand car until within a distance of about 100 yards; that the section master saw the smoke-stack of the approaching locomotive when distant 400 or 480 feet from it, and when the hand car was moving down grade at a speed of between six and eight miles an hour, when he called to and signaled the hands who were operating the the car to stop; that the car was struck by the locomotive before it was

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

[2] Upon the question of who are fellow-servants within the meaning of the rule exempting the master from liability for injuries resulting to an employe through the negligence of a co-servant, see Reddon v. Railroad Co., (Utah,) 15 Pac. Rep. 262, and note.  Theleman v. Moeller, (Iowa,) 34 N. W. Rep. 765; Railroad Co. v. De Armond, (Tenn.) 5 S. W. Rep. 600.

stopped; that when the engineer on the locomotive first saw the car, about 300 feet distant, the locomotive was running at a speed exceeding 18 miles per hour; that the engineer at once applied the air-brakes, and used all means to stop the locomotive, but was unable to do so, but did reduce its speed before it came in contact with the car; that at the time of the collision the section master was sitting on the front of the car, while petitioner and his fellow-workmen were "pumping" the lever by which the car was propelled, petitioner and one other workman being at the rear end of the lever, his face in the direction in which the car was moving, the other two section hands being at the forward end of the lever; that when the section master gave the alarm the men upon the car, except petitioner, jumped therefrom to save themselves; that almost immediately the collision occurred; so quickly that, as one witness testifies, the tools carried upon the car were thrown in the air by the force of the collision about the time he reached the ground; that the whistle of the locomotive was several times sounded as it crossed highways within a mile of the section house, the last time about 400 yards from the point of collision; that the whistle was not sounded when the car was discovered, as the fireman from his position on the locomotive could not reach the whistle lever, and both hands of the engineer were engaged in applying the checking apparatus of the locomotive, but that the fireman rang the locomotive bell; that the wind was blowing from the car towards the locomotive, and those upon the car did not hear the bell or any of the whistle alarms; that petitioner did not see the locomotive, did not hear the call of the section master or see his signal to stop, did not see the men jump from the car,—in fact, did not see or become aware of any of the occurrences aforesaid; that when the car was struck, petitioner was thrown a distance of about 40 feet, and about as high as the smoke-stack of the locomotive. and did not "know anything" until he found himself lying several hours thereafter upon the gallery of the section-house aforesaid; that the engineer in charge of the locomotive which collided with the hand car as aforesaid was guilty of negligence in running the locomotive at the rate of speed aforesaid around said curve, in violation of rule 12, limiting the speed in that place to six miles an hour, and that, but for such negligence, the accident by which petitioner received his injuries would not have occurred; and that, under the federal authorities as the master construed them, the negligence of the said engineer was not that of a fellow-servant with petitioner in that sense which would exonerate the defendants, as the common master, from liability therefor, but that his said negligence was, in legal contemplation, the negligence of the defendants; that under the decisions of the appellate courts of Texas the defendants would not be liable to petitioner for the consequences of such negligence; that the negligence of the engineer in running his locomotive at a speed exceeding 18 miles an hour, under the circumstances hereinbefore detailed, was the proximate cause of petitioner's injuries, and that the failure of the petitioner to see the approaching locomotive, considering the position which he occupied upon the hand car and the short space of time which transpired between

the time when the locomotive could first be discovered and the moment when the collision occurred, is not sufficient to charge him with negligence efficiently or substantially contributing to his injuries, and that therefore petitioner is entitled to recover in this action, and that the said receivers are officially liable to him for the payment of such damages as may be adjudged him as compensation for his injuries.

*Campbell & Dunham,* for intervenor.

*O. T. Holt.* for receivers.

PARDEE, J. According to the report of the special master, the petitioner, a section hand in the employment of the receivers, while operating a hand car on the railway, was injured through the negligence of another employe of the receivers then operating a locomotive on the same tracks. The duties of the petitioner as a section hand are not specifically set forth by the master, but the report does state that at the time of the injury complained of the petitioner, with other section hands and the section foreman, "in due course of employment, were traveling on a hand car over said section," and the petitioner and his fellow-workmen were pumping the lever by which the car was propelled. There is no question but that the engineer in charge of the locomotive was in the line of his duty. It follows that the duties of the two employed and paid by the same master brought them to work at the same place at the same time, so that the negligence of the one in doing his work injured the other in doing his work. Their separate services had an immediate common relation, to-wit, the use of the same tracks. Neither worked under the control or orders of the other.

The master says in his report "that under the federal authorities, as I construe them, the negligence of said engineer was not that of a fellow-servant with petitioner in that sense which would exonerate the defendants as the common master from liability therefor, but that his said negligence was, in legal contemplation, the negligence of the defendants. I am of the opinion that under the decisions of the appellate courts of Texas the defendants would not be liable to petitioner for the consequences of such negligence."

It seems to be conceded as to the Texas decisions the master is correct.

The case here is one arising in Texas, and under the laws of Texas, and Texas law ought to control as to the defendants' liability. There is no other law to govern it. As federal authorities sustaining the finding of the master, I have been referred to the case of *Railroad* v. *Ross,* 112 U. S. 377, 5 Sup. Ct. Rep. 184, which holds that "a conductor of a railroad train, who has the right to command the movements of the train, and to control the persons employed upon it, represents the company while performing those duties, and does not bear the relation of fellow-servant to the engineer and other employes of the corporation on the train;" and to the later case of *Railroad Co.* v. *Herbert,* 116 U. S. 648, 6 Sup. Ct. Rep. 590, where it was held that a brakeman and the officer or agent of the company charged with the duty of keeping the cars in repair were not fellow-servants within the common-law rule. These cases

were decided by a divided court. In the *Case of Ross*, the vice-principal doctrine is recognized, and in the *Case of Herbert*, the fellow-servant negligence rule is modified by limiting the application of the rule to employes in the same department of service, and under this latter authority I can well see how the master might conclude in this case that, as the section hand and the locomotive engineer are in separate departments, they are not fellow-servants assuming the risks of each other's negligent acts. I am, however, of the opinion that neither of these cases is applicable to the facts of the present case. Whatever may be as a general rule the duties of the section hand, as distinguished from the duties of those railroad employes running trains and locomotives, at the time of complainant's injury he was running a car on the road, and his duty and employment brought him in direct connection and relation with the employes running the special train causing the injury. Both were using the tracks of the railway at the same time, and so near to each other that the conduct of the one necessarily affected the comfort and safety of the other. At that time it seems to me they were fellow-servants in the same general department, governed by the same rules, and respectively charged with the ordinary risks of each other's negligent acts.

The case of *Randall* v. *Railroad Co.*, 109 U. S. 478, 3 Sup. Ct. Rep. 322, by a unanimous court, seems to me to be directly in point. In that case a brakeman of one train, while attending a switch on one track in a railroad yard, was injured by the negligence of an engineer of another train on another track. They were held to be fellow-servants, within the rule, and the rule was illustrated as follows:

"They are employed and paid by the same master. The duties of the two bring them to work at the same place, at the same time, so that the negligence of the one in doing his work may injure the other in doing his work. Their separate services have an immediate common object,—the moving of the trains. Neither works under the orders or control of the other. Each, by entering into his contract of service, takes the risk of the negligence of the other in performing his service; and neither can maintain an action for an injury caused by such negligence against the corporation, their common master."

This illustration fits this case as though made especially for it.

As the Texas authorities are conceded to be against the intervenor, it is not necessary to go further with this case. An order will be entered sustaining the defendants' exceptions to the master's report, and dismissing the intervention of Henry Martin, with costs.

SABIN, J., dissenting from the opinion of the circuit judge, the matter was allowed to lie over, to be heard by the circuit justice, or for the division to be certified, as counsel may elect.