CAMDEN & S. RY. CO. v. RICE.

(Circuit Court of Appeals, Third Circuit. May 4, 1905.)

No. 19.

1. CARRIERS—STREET RAILROADS—INJURIES TO PASSENGERS—TIME TO ALIGHT— CONTRIBUTORY NEGLIGENCE.

In an action for injuries to a passenger on a street railway car while attempting to alight, evidence *held* to require submission of plaintiff's contributory negligence to the jury.

2. SAME—ACTIONS—PLEADING—ISSUES AND PROOF.

In an action for injuries to a passenger by the premature starting of a street car as she was attempting to alight, an allegation that it then and there became and was the duty of the defendant to use due care that the plaintiff should be safely conveyed on her journey, was sufficient to present the question of defendant's negligence in not properly supervising the car and in looking after passengers at the point where plaintiff attempted to alight, to see whether any of them wanted to alight or not, and whether defendant's employés did everything that reasonable prudence required of them at the time, etc.

3. SAME—EVIDENCE—MORAL CHARACTER—EFFECT—LIMITATION.

Where, in an action for injuries to a passenger on a street car, defendant, in rebuttal, introduced evidence showing a physical condition since the accident different from that described by plaintiff at the trial some of which tended to asperse plaintiff's moral character, it was not error for the court to charge that the evidence relating to plaintiff's moral conduct could not be used to impeach her testimony as a witness.

4. SAME—NEGLIGENCE.

Where a street car approached a railroad crossing protected by a derailing switch there was no negligence in the mere fact that the conductor of the street car left it and went ahead to operate the switch.

In Error to the Circuit Court of the United States for the District of New Jersey.

J. H. Gaskill, for plaintiff in error.

Francis D. Weaver, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. Suit was brought in the court below by the defendant in error, hereinafter called the plaintiff, against the plaintiff in error, hereinafter called the defendant, to recover damages for injuries alleged to have been occasioned by the negligence of said defendant.

The defendant company operated an electric or trolley railway from the Market Street Ferry, in the city of Camden, N. J., to the town of Haddonfield, in the same state. On the evening of the 21st

of July, 1903, the plaintiff boarded a trolley car of the defendant company at the said Market Street Ferry, as a passenger, on her way to her brother's house, who lived on Line street in the city of Camden, a short distance from its intersection with Haddon avenue, upon which the trolley line of the defendant company ran. Haddon avenue and the trolley line crossed Line street diagonally in a direction away from the house of plaintiff's brother, his house being on the side of Line street farthest from the car as it approached said street. Right at the intersection of Line street and Haddon avenue and the said trolley line, the tracks of the West Jersey & Seashore Railway crossed Line street, at, or nearly at, right angles, and Haddon avenue and the tracks of the trolley line diagonally. There is testimony tending to show that when the plaintiff paid her fare, she told the conductor that she wished to get off at Line street. There is also testimony tending to show that, as the car approached Line street, the conductor called out the name of that street, and that directly after the car stopped at a point, which placed the rear end of the car about 120 feet from the near side of Line street. It was also in testimony, and undisputed, that the car always stopped at that point to allow the conductor to go ahead to the near side of Line street, in order to operate a derailing switch, which would permit his car to cross the tracks of the said West Jersey & Seashore Railway, and that when he had so operated the switch, upon his signal for that purpose, the motorman started his car and crossed the said railway tracks and Line street, stopping upon the farther side thereof. There was also testimony tending to show that at this point where the car usually stopped, in order that the derailing switch might be operated, passengers were in the habit of alighting and going in the direction of a brick tavern or saloon, situated at the corner of Haddon avenue and Line street. On the night in question, there was evidence tending to show that, after the car had stopped at the point mentioned, being the first stop after Line street had been announced by the conductor, and after the conductor had left the rear platform and gone ahead for the purpose stated, the plaintiff, while attempting to alight from said platform, was thrown violently forward upon the ground, by reason, as she alleges, of the starting of the car at that instant. The plaintiff testified that she had, on several occasions, used this trolley line in visiting her brother's house, and was aware of the custom to stop before reaching Line street, at the point indicated, and knew that the stop was for the purpose of allowing the conductor to go ahead and operate the derailing switch.

At the conclusion of plaintiff's testimony, the defendants moved for a nonsuit, and the refusal of this nonsuit is made the first assignment of error. The nonsuit was contended for on the ground that the plaintiff, by her own testimony, had shown contributory negligence in getting off the car at the point where it stopped, just before reaching Line street; that from her familiarity with the running of the cars, she must have known why the car stopped at that point, and why the conductor was not on the rear platform. We

think, however, on the whole, that the trial judge was right in refusing the nonsuit and deciding to submit to the jury the question whether the plaintiff was guilty of contributory negligence, or not, along with the question as to the negligence of the defendant company. There was testimony tending to show that it was customary for passengers to alight at this point; that when they did so, they were facing a large saloon, situated at the corner of Haddon avenue and Line street, not more than 60 feet away. The point was also a convenient one from which to go to her brother's house, the distance being somewhat shorter and the route more direct and convenient than that from the alighting point on the farther side of Line street. It was between 10 and 11 o'clock in the evening when she attempted to alight, and, according to her testimony, the conductor was not only absent from the rear platform, but no notice was given, by bell or otherwise, that the car was about to start.

There is little added to our knowledge of the situation by the testimony of the defendant. No one seems to have seen the plaintiff when she arose from her seat to go to the rear platform, or to testify how long she waited after the stopping of the car before she started to leave it. The car was in two compartments, the forward one being used for smoking, the plaintiff sitting in the one in the rear. The motorman testifies that after he had received the signal from the conductor to go ahead over the railroad tracks, he looked through the car to see if anybody was about to alight, and seeing no one he proceeded to cross the railroad. At the conclusion of the case, there was a motion for peremptory instructions in favor of the defendant, which was also refused on much the same ground that the motion for a nonsuit was refused. Though the case is a close one, we think the judge below was right in this refusal. It is a salutary and well-established rule that if, looking at all the evidence and drawing such inferences therefrom as are just and reasonable, the court could say, as matter of law, that the plaintiff was not entitled to recover, an instruction to find for the defendant would be proper. Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780; Randall v. B. & O. R. R., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003. Or, as the rule is sometimes stated, if the testimony is of such a conclusive character as would compel the court, in the exercise of a sound legal discretion, to set aside a verdict if one were returned in opposition to such testimony, a peremptory instruction should be given in advance of the verdict. The suggestion of such a course, however, is, in the nature of things, largely addressed to the sound judicial discretion of the trial judge. A reviewing court will be careful not to interfere with the judgment of the trial judge in such a case, unless the evidence is such as to clearly and unequivocally show that he was mistaken in refusing such peremptory instructions. We think the learned judge of the court below, in submitting the primary question of the negligence of the defendant company, and the secondary question of contributory negligence of the plaintiff, has correctly analyzed these questions and clearly stated the grounds upon which his refusal of peremp-

tory instructions is justified. We quote from the charge as follows:

"The defendant company is a common carrier of passengers; it is bound to take reasonable care of passengers that it conveys in its cars, and the law is well settled that that reasonable care on the part of a common carrier towards its passengers is a high degree of care. That is what the defendant company was bound to do in this case. Now was the defendant company guilty of negligence? Was there any act of negligence on the part of the conductor, or on the part of the motorman, which approximately contributed to this accident, or which was the proximate cause of this accident? That is the question in the case. If the conductor did call out Line street before reaching the point at which the car stopped, that being the point where the plaintiff alighted, was that an invitation on his part to any person in the car who desired to get off at Line street to alight there? Was it in view of the fact that the plaintiff had told him that she wanted to get off at Line street, in case you find she did so tell him, an invitation to her to alight from the car at that point? Or was it her duty to remain in the car until the steam car track had been crossed and until the trolley car had actually reached Line street? The conductor told you that he himself is not sure, but he thinks (if my memory is right) that he did call Line street before reaching the steam car track. If the plaintiff was justified in attempting to get off of the car at that point, was the defendant company negligent in not properly supervising the car or the passengers, looking after the passengers in the car at that point to see whether any of them wanted to alight or not? Did the conductor leave the car and pass forward to the switch before the car had quite stopped? The testimony does not tell us, as I recall. Did he exercise toward the plaintiff that care that reasonable prudence would call for from him in case she had notified him that she wanted to get off at Line street and in case he had called Line street before reaching this point? If she did tell him that she wanted to get off at Line street, and if he did call Line street before reaching this point, was it his duty to remain on the platform of the car until the car had come to a full stop, to see that she alighted properly from the car? These are all questions for you to consider and decide, not for me. The conductor, at any rate, went forward and operated the switch; the car, it is admitted, came to a full stop; the conductor, having operated the switch, signaled the motorman to proceed; the motorman says that he opened the door of the car and looked into the car and saw none of the passengers moving, and so started the car. Did he do all that reasonable prudence required of him at that time? There was a smoking compartment in the car; the testimony shows that the two compartments were separated by a partition. The exact character of that partition is not explained. Was it a partition of glass, or was it a partition which obstructed the view of the motorman as he peered into the car? Was the motorman able to see through the car from one end of it to the other, and the rear platform, in order to see whether any of the passengers were alighting? If he could not, then did he discharge his full duty, or was he bound to look out on the side of the car, or make some other effort to ascertain whether any one was attempting to get off the car? Was he not obliged, as he knew there was no conductor on the car, to take greater precaution to ascertain whether any one was attempting to alight from the car, than would have been required of him had he known the conductor was on the car? These are all questions for you to consider, and they all bear upon the question of the negligence of the defendant company."

It is true that counsel for the plaintiff in error make this part of the charge the ground for special assignments of error. In their brief, they thus in part state the grounds of their assignments of error:

"It is respectfully submitted, with due deference to the learned judge who tried the case below, that he, of his own motion and without any allegation in the declaration, and without any testimony, sets up certain duties which, according to his notion, the defendant company was under obligation to per-

form, and submits to the jury in the form of a query whether their failure to perform these duties, existing wholly in the imagination of the judge, constituted negligence on the part of the defendant. He asks the jury: 'If the plaintiff was justified in attempting to get off of the car at that point, was the defendant company negligent in not properly supervising the car or the passengers, looking after the passengers in the car at that point to see whether any of them wanted to alight or not?' The declaration nowhere sets up any insufficient supervision of the car or of the passengers; the negligence alleged is that the car was started as the plaintiff was alighting."

Again:

"It seems to the defendant that all the way through this portion of the charge, the judge is raising a standard of duty which is not justified by the facts nor by the testimony."

We think the declaration, in alleging that when the relation of passenger to the defendant was established by the payment of her fare, "it then and there became and was the duty of the defendant to use due and proper care that the plaintiff should be safely and securely carried and conveyed on her said journey," sufficiently and comprehensively alleged a duty, the consideration of which rendered the possible phases of that duty, suggested by the trial judge as above quoted, proper subjects of inquiry for the jury. We do not find that any standard of duty has been suggested that was not pertinent to the evidence as a matter of inquiry, or that in point of law was amenable to just criticism. We think the court, in the part of the charge quoted, clearly and correctly performed its duty of assisting the jury in coming to a correct conclusion as to, and proper determination of, the issues committed to them, and we cannot find that, in so doing, it trenched at all upon the prerogatives of the jury as triers of fact, or made any suggestion as to the duty of either defendant or plaintiff in the premises, that was not covered by the pleadings.

What we have here said is applicable to the subject-matter of the fifteenth and sixteenth assignments of error, to the effect that there was a material variance between the allegations and the proof. Objection is made in these assignments to the refusal of the court to charge the jury that "the negligence of the defendant, as laid in the declaration, has not been proven," and that "no other negligence of the defendant than such as was laid in the declaration, can be considered in this case." We think the learned judge of the court below properly answered these requests by saying in his charge:

"I am not prepared to hold that evidence of negligence in this case is not fairly embraced in the declaration. It is true that you should be confined to evidence of negligence, of the character described in the declaration, but I think the declaration sufficiently covers evidence of negligence that has been adduced in this case."

During the trial, the defendant produced testimony to rebut that of the plaintiff in regard to her physical condition as the result of her injuries. In the course of that testimony, witnesses testified as to conduct on her part, tending to show a physical condition since the accident different from that described by her at the trial. Some of this testimony tended to asperse the moral character of

the plaintiff. In response to a request by the plaintiff, the judge charged the jury as follows:

"I am also asked to charge by the plaintiff that 'evidence relating to the moral conduct of the plaintiff cannot be used to impeach her testimony.' I have already said that her moral character is not in question at all. She might be a person of immoral character, of very bad character, and yet, if she received an injury on this night in question, she would be entitled to compensation for that injury. As I have said, we are dealing with the injury she received, and not with her moral character."

This portion of the judge's charge is made the subject of one of the assignments of error. As the evidence in question was only admitted on account of its relevancy to the question of the plaintiff's physical condition, we fail to see why it was not entirely proper for the trial judge to warn the jury that, so far as the testimony related to moral character, it could not be used, directly, to impeach the credibility of the plaintiff, or to affect her right to recover full compensation for injuries received through the negligence of the defendant. Such testimony, in so far as it did not relate to moral delinquencies that directly affected veracity, would not have been admissible if offered for the purpose of impeaching the credibility of a witness, and, in our opinion, it was perfectly proper to protect the jury from falling into the mistake, not an uncommon one, of supposing that credibility can be impeached by showing that a witness is in other respects immoral. Whatever effect such testimony was calculated to produce in the minds of the jury, in the way of general diminution of respect for the witness and in detracting from the strength and weight which high and unimpeached character gives to testimony, that effect was not necessarily impaired by the remarks quoted from the charge. It will be observed that these remarks do not refer to moral character as especially affecting credibility. The trial judge merely, and as we think properly, cautioned the jury against supposing that her moral character is a question at issue before them, or that her right to compensation for an injury could be affected thereby.

The only other assignments of error that have been insisted upon before us are those that relate to the refusal of the court to charge certain requests of the defendant. These requests, and the court's answers thereto, are as follows:

"Fifth. 'There was no negligence on the part of the conductor in leaving the car to operate the switch, and in signaling the motorman to start the car as he did.' I cannot charge that in those words. I am willing to say that there was no negligence in the mere fact that the conductor left the car and went ahead to operate the switch, but whether before leaving the car he exercised that duty toward the plaintiff that he should have exercised is, as I said awhile ago, a question for you to consider. I cannot charge that request.

"Sixth. 'There was no negligence on the part of the motorman in starting the car as he did.' I cannot charge that. That is a question for you to decide.

"Seventh. 'The defendant owed no duty to plaintiff with respect to giving her time or opportunity to alight, until the far side of Line street had been reached, that being her destination and of which she had given notice to the conductor.' I cannot charge that. That is a question for you to decide. As I said awhile ago, whether she was justified in leaving the car at the point she did leave it, or whether she should have remained in the car until the

car reached Line street and crossed over the steam railroad track, is a question for you to decide.

"Eighth. 'The plaintiff knew the railroad tracks had to be crossed to reach Line street; she knew the conductor had gone ahead to turn the switch that the car might cross the railroad tracks; while he was gone for this purpose she attempted to alight, and at a place which she knew was not her destination; she was therefore guilty of such contributory negligence as will bar her recovery, and the verdict must be for the defendant.' I cannot charge that for reasons I have already stated.

"Ninth. 'Even if the conductor had called Line street before leaving the car to turn the switch, the plaintiff, knowing that Line street had not been reached, and knowing the purpose for which the conductor had stopped and left the car, and knowing that the car would again stop on the far side of Line street for her to alight, she was herself negligent, and cannot recover in this action.' I cannot charge that; I decline so to charge."

For the reasons already stated, in considering the refusal of the court below to nonsuit, or to give peremptory instructions to find for the defendant, we think there was no error in the answers given by the learned judge of the court below to these requests. All of them, except the first, are equivalent to a request for peremptory instructions. As we have already intimated, the province of the jury, as triers of fact, should not be lightly or inconsiderately invaded by the court. Where it is at all doubtful whether a question should be decided by the court as one of law, or be left to the jury as a question of fact, it is the safer and better course to refrain from withdrawing it from the jury.

The judgment below is affirmed.