6978

McLEAN v. ATLANTIC COAST LINE R. R. CO.

1. CARRIER—RAILROADS—PASSENGER—WILFULNESS.—There was no evidence in this case to warrant submitting to the jury the issue whether a young man injured while riding on the top of a caboose attached to a freight train by its turning over was caused by the wilfulness of the carrier.

2. IBID.—IBID.—IBID.—CONTRIBUTORY NEGLIGENCE.—A passenger who leaves his seat in a passenger coach attached to a freight train and climbs upon the cupola of a four-wheel caboose car attached to the passenger coach, no emergency excusing the act, and is injured by reason of the caboose leaving the track and turning over, the passenger coach remaining intact on it and no one therein injured, is guilty of negligence which contributed as a proximate cause to his injury and cannot recover of the carrier therefor.

*Zemp* v. *R. R.,* 9 Rich., 84, *distinguished from this.*

3. REHEARING refused.

Before MEMMINGER, J., Darlington, Spring term, 1907. Reversed.

Action by Agnes B. McLean, administratrix of William G. McLean, against Atlantic Coast Line Railroad Company. From judgment for plaintiff, defendant appeals.

*Messrs. Willcox & Willcox, Henry E. Davis, J. T. Barron, E. O. Woods* and *W. F. Dargan,* for appellant.

*Messrs. Willcox & Willcox* and *H. E. Davis* cite: *The top of a car is a dangerous place to ride:* 72 S. C., 336; 76 S. C., 557. *The facts show negligence or contributory negligence on part of deceased:* 23 S. C., 531; 95 S. C., 439; 9 Rich., 84; 72 S. C., 336; 4 Elliott on R. R., secs. 1631, 1632; 61 Am. St. R., 90; 19 Am. St. R., 587; 37 Am. R., 651; 42 Am. R., 208; 75 Pac., 212; 55 Atl., 836; 12 A. & E. R. R. Cas. (N. S.), 1; 117 Fed. R., 127; 35 Am. St. R., 17. *And if his negligence contributed as a proximate cause, plaintiff cannot recover:* 15 S. C., 451; 23 S. C., 537; 61

S. C., 486; 4 Elliott on R. R., sec. 1642; 58 S. C., 491; 72 S. C., 336; 77 S. C., 328. *Passenger riding on a freight train assumes all risks incident to such transportation:* 55 S. C., 393; 4 Elliott on R. R., sec. 1629. *Conductor cannot authorize a passenger to ride at an improper place:* 4 Elliott on R. R., secs. 1643, 1632; 75 Pac., 212; 14 Allen, 429; 32 A. M. St. R., 17; 37 Am. St. R., 651; 14 Am. St. R., 411; 95 U. S., 439; 48 Am. R., 10; 42 Am. R., 212; 4 A. & E. R. R. Cas. (N. S.), 86; 129 Mass., 351; 120 Ind., 549. *A brakeman cannot authorize a passenger to ride in an improper place:* 48 Am. St. R., 10; 12 R. R. R., 153; 23 S. C., 531; 4 Elliott on R. R., sec. 1632; 72 S. C., 336. *What is contributory negligence?* 59 S. C., 322; 58 S. C., 491; 61 S. C., 345, 386; 62 S. C., 1; 70 S. C., 470. *That a train runs off the track is not presumptive of negligence:* 72 S. C., 340, 402. *Proof of injury to passenger does not raise presumption of negligence:* 72 S. C., 340; 55 S. C., 389; 58 S. C., 491.

*Mr. E. O. Woods* cites: *Passenger riding in a more dangerous place than provided for passengers is guilty of contributory negligence:* 72 S. C., 339; 55 S. C., 488; 6 Cyc., 652; 42 Am. R., 212; 5 Ency., 674; 6 L. R. A., 646; 77 S. C., 343; 41 Mo. App., 432; 3 Hutch. on Car., sec. 1194. *If his position is one of obvious danger an invitation to ride there by conductor does not relieve him:* 3 Hutch. on Car., sec. 1221; 31 Am. St. R., 899; 6 L. R. A., 646; 48 Am. R., 12; 92 Pa., 21. *Brakeman has no authority to extend such invitation:* 3 Hutch. on Car., sec. 1222. *No evidence of wilfulness:* 54 S. C., 507; 60 S. C., 507; 35 S. C., 489. *If deceased's negligence acted as a proximate cause, plaintiff cannot recover:* 56 S. C., 94; 58 S. C., 228; 55 S. C., 191; 59 S. C., 323; 62 S. C., 141. *Carrier is not required to know position of passenger:* 42 Am. R., 212; 3 Hutch., sec. 1221; 5 Ency., 645; 72 S. C., 339; 6 L. R. A., 646. *Definition of contributory negligence:* 56 S. C., 95; 55 S. C., 188; 23 S. C., 542. *Duty of passenger while on train:* 5

Ency., 648; 3 Hutch. on Car., sec. 1221; 14 Am. St. R., 411; 56 Am. Rep., 842; 8 Am. St. R., 752.

*Messrs. Edward McIver, W. P. Pollock* and *Spears & Dennis,* contra. *Mr. McIver* cites: *Carrier owes highest duty to passenger on freight train commensurate with skill and caution in running such train:* 55 S. C., 389. *Injury to passenger by some agency of carrier raises presumption of negligence:* 9 Rich., 84; 55 S. C., 389; 58 S. C., 491; 62 S. C., 139; 52 S. C., 343. *Proximate cause was for jury:* 62 S. C., 130. *Passenger is not barred of recovery if his negligence is not proximate cause of injury:* 62 S. C., 130; 14 Sup. Ct. R., 281; 13 Sup. Co. R., 557; 51 S. C., 150; 23 S. C., 531; 9 Rich., 84. *Does testimony here admit of no other inference than that negligence of deceased was proximate cause of injury?* 9 Rich., 84; 61 S. C., 353; 72 S. C., 336; 58 S. C., 494; 77 S. C., 328. *Contributory negligence is no defense to a wanton act:* 23 S. C., 531; 61 S. C., 187; 65 S. C., 93; 60 S. C., 74.

*Messrs. Spears & Dennis* cite: *Court will not decide question of contributory negligence unless evidence is capable of only one conclusion:* 49 A. & E. R. R. Cas., 358; 21 Mo. App., 188; 58 A. & E. R. R. Cas., 360; 7 At. R., 105; 8 A. & E. R. R. Cas., 85; 1 Abb. App. Dec., 131. *The negligence of deceased was not the proximate cause of the injury:* 86 Pa., 139; 56 Tex., 178; 7 Mackey, 255; 8 A. & E. R. R. Cas., 480; 77 S. C., 328; 29 Wis., 22; Whar. Neg., sec. 995; 86 Mo. 574; 5 L. R. A., 787; 97 N. C., 11; 7 L. R. A., 181. *Invitation of servant of carrier to ride in a dangerous place or failure to insist on his leaving makes primary negligence of passenger remote:* 5 Am. St. R., 510; 19 Mo. App., 380; 31 W. Va., 477; 7 L. R. A., 678; 38 Md., 588; 47 Hun., 439; 52 Am. & Eng. R. R. Cas., 427; 3 Ohio. St., 172; 67 Ala., 114, 533; 53 Ala., 70; 81 Ala., 185; 59 Ala., 272; 39 A. & E. R. R. Cas., 674; 34 A. & E. R. R. Cas., 97; 2 Dud., 114; 5 Bush., 1; 6 Bush., 574; 14 J. & S., 473; 34 Mo. App., 57.

*Requests of defendant divest deceased of his rights as a passenger:* 9 Rich., 84; 55 S. C., 389; 74 S. C., 136; 15 L. R. A., 33; 39 L. R. A., 499. *Whether deceased voluntarily assumed a position of danger was for jury:* 24 L. R. A., 710; 123 Ill., 162; 92 Mo., 208.

The opinion in this case was filed July 6th, but remittitur held up on petition for rehearing until

July 25, 1908. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff, as administratrix, brought this action to recover damages for the death of William McLean, caused by the derailing of a caboose car, on top of which he was riding, alleged to have been the result of defendant's negligent and wilful conduct. The trial resulted in a verdict and judgment for $10,000 in favor of the plaintiff. The defendant has appealed to this Court upon forty-two exceptions, with numerous subdivisions. We deem it unnecessary to consider the exceptions in detail, but will direct attention to the pivotal and controlling questions:

1. Was there any evidence tending to show that McLean's death was the result of any wanton or wilful act or omission on the part of the defendant?

It appeared that on August 11, 1904, William G. McLean, with nine or ten other young men, boarded the defendant's train at Darlington, S. C., with a block ticket for the party from that point to McCall, S. C., where they were going to play baseball. The train was a freight train, but there was also a passenger coach attached and at the rear end of the train there was a four-wheeled caboose. There were twenty-five passengers, including three infants, and the seating capacity of the coach was sufficient for twenty-four grown persons.

Just after the train left Darlington, Conductor York began taking up the tickets, beginning in the passenger

coach.   On entering the caboose car, he found several pas-
sengers in there, among them D. T. McKeithan, J. W.
Moore and four or five of the baseball men, including Wil-
liam G. McLean.   The conductor testified that he told the
men in the caboose car that said car was not for passengers,
and requested them to go into the passenger coach.   This
was corroborated by the testimony of McKeithan, Moore
and Scarborough, one of the train hands.   Fred Stem testi-
fied that he went into the caboose with the conductor, pointed
out the men in there entitled to ride on the block ticket, and
returned to the passenger coach, and that he did not hear the
conductor make such statement.   J. W. Willcox testified
that he was in the caboose car and did not hear the state-
ment.   Later McKeithan and Moore and some of the young
men went into the passenger coach.   There can be no rea-
sonable doubt that such a statement was made by the con-
ductor, and at the same time it may be conceded that Stem
and Willcox did not hear it.   Whether the unfortunate
McLean heard it will never be known with certainty.   There
can be no reasonable doubt that the conductor intended that
all present should hear the statement, and the fact that said
statement was made and was acted on by some present, must
be kept in mind, in judging whether the after conduct of the
conductor indicated any wanton or wilful disregard of duty.
The conductor returned to the front end of the passenger
coach, where he kept his bill box and papers.

At Mont Clair, a station about seven miles from Darling-
ton, McLean and Smith climbed up on top of the caboose by
means of a ladder at the rear end.   After the train passed
Mont Clair, and before reaching Lumber, which is about ten
miles from Mont Clair, J. W. Willcox climbed upon the cab
and found McLean and Smith up there, and he sat with them
upon the cupola of the cab.   Mr. Willcox stated that he
went up there because it was sultry and hot in the caboose;
that before going he asked a brakeman of the caboose to
open the window of the cupola; that he was informed that
the window was nailed or tight and could not be raised, and

that the brakeman suggested that it was cooler on top, and that he go up there.    This is all the evidence to support the allegation that McLean was invited by defendant's agent to ride on top of the caboose, and the testimony as to the suggestion of the brakeman was taken subject to the objection that a mere brakeman has no authority whatever, real or apparent, to invite a passenger to ride on top of the caboose. There was not a particle of evidence that the conductor was aware that these young men were riding on top of the caboose from Darlington to Lumber.    The train stopped for about one-half hour at Lumber, shifting, etc.    During this stop these young men ate some watermelon on top of the cab and engaged in sport with others on the ground, throwing the rinds at each other.    After this, according to Willcox's testimony, Smith went down and Fred Stem went on top of the caboose.    Stem said he went up after the train had stopped at Lumber about thirty minutes, and found Willcox and McLean there.    Willcox could not state positively whether McLean went down from the cab during the stay at Lumber, but the uncontradicted testimony of J. W. Moore makes it certain that he did.    Moore testified that while at Lumber, McLean came down into the passenger coach and sat with him a few minutes on the seat vacated by McKeithan, who got off at Lumber, his destination; that he had some watermelon rind in his hair and brushed it out, seemed warm and fanned himself awhile, got up and disappeared; that he did not see him any more until after the wreck. McLean, therefore, having a seat in the passenger coach, voluntarily left it and went on top of the caboose.

The complaint alleged that "plaintiff's intestate and others were seen by the conductor and other agents of the defendant company to be riding on top of the caboose, and were not warned of any danger thereon."    The only evidence offered to establish this is fairly represented by the following from the testimony of J. W. Willcox:

"Q. When you got to Lumber did the train stop any considerable length of time?    A. It stopped about half an hour,

and did some shifting in the yard. Q. Did you at any time see the conductor? A. Yes, he was walking around there. Q. Did he see you? A. He should have seen me. Q. Could he see whether there was anybody on the caboose or not? A. He could see. Q. Did he see? A. He should have seen; we were in a conspicuous place. Q. Was there any remark made to him by anyone up there while you were at Lumber? A. We bought some watermelons and we were eating watermelon, and I think some of the boys, in a guying way, asked the captain if he would have a piece. Q. Did he, when that remark was made to him, look up there? A. He looked in that direction. Q. Did he answer? A. I couldn't say; he was a good distance off."

The conductor testified that he was busy with duties at the station, and was not aware that any of these young men were on the caboose until at the time of the wreck. But conceding that the conductor actually saw these young men on top of the caboose, while it was at rest at Lumber and detached from the engine, that fact would not tend to show that he had reason to believe they would remain and ride on top of the caboose. He had already informed passengers, in the presence of McLean, that it was against the rules for passengers to ride inside the caboose. While the caboose was at rest and detached from the engine, there was no real danger in going on top and eating watermelon there. For that matter they could have chased each other over the bumpers or under the cars without danger if the shifting engine was not about to connect. The hazard was not in being on top of the caboose while it was detached and at rest, but in daring to ride upon it, and there was no evidence that the conductor knew that they had ridden or intended to ride there. On the contrary, the only reasonable inference to be drawn from the testimony is that the conductor, in view of the notice he had already given that the caboose was not to be occupied by passengers, had reason to believe that no one would be so reckless as to remain and ride on its top. Fur-

ther, with respect to the question whether the defendant, through its agents, wilfully failed to warn the plaintiff's intestate not to ride on the caboose, there was testimony by J. W. Moore, without direct contradiction, to the effect that while the train was at Lumber, a few minutes before its departure, he heard some of the train crew say to some one on top of the train, "You better come inside, the white folks don't allow you to ride up there." Willcox and Stem testified, however, that they heard no such warning.

When the train left Lumber it was some thirty minutes late. The track between Lumber and Robbins Neck was straight and slightly down grade. McLean, Willcox and Stem were sitting on the cupola of the caboose. There is nothing in the testimony from which it could be reasonably inferred that the speed of the train was reckless, or that it exceeded the schedule speed of thirty miles an hour allowed by the rules of the company, and there was no attempt made to show that such rule was unreasonable. In these days a high rate of speed may be perfectly consistent with due care in the management of a freight train. For the purpose of the point under consideration, it may be conceded that there was a scintilla of evidence tending to show a high and rapid rate of speed. It may have so appeared to some passengers, and especially to those riding on top of the caboose, who were necessarily subjected to the jerky motions of a freight train. Conceding even that there was evidence tending to show a negligent rate of speed, still there was failure to show such a speed as indicated a wanton and wilful disregard of duty, for negligence and wilfulness indicate opposite states of the mind. When the accident happened the engineer had blown the signal for Robbins Neck, a flag station about three miles from Lumber. Suddenly the cab was derailed, broke loose from the passenger coach, and turned over down a slight embankment, precipitating McLean, Willcox and Stem to the ground, and so injuring McLean that he died two days thereafter.

The acts of wantonness alleged to have caused the injury and death are thus summarized in the seventh paragraph of the complaint:

VII. "That said car was derailed and wrecked as aforesaid by the negligence, carelessness, recklessness and wantonness of the defendant company and its agents, servants and employees, acting in the scope of their agency and duties: (a) in providing unsafe, unsuitable and unfit cars on their said train on said occasion; (b) in attaching to the rear of its said train the light, short and small car or caboose, which was unfit and unsafe for such use; (c) in attaching to the rear of its train a car not provided with sufficient trucks or wheels, and which was too light and short for such use, and which was unfit and unsafe for passengers to ride in; (d) in running said train, as constructed, at a high and excessive rate of speed; (e) in allowing, permitting, encouraging and inviting passengers to ride in said unsafe, unfit and improper car or caboose, and in unsafe and dangerous places on their said train of cars, and in failing to warn them of danger; (f) in failing to have heavy, strong rails, properly and securely fastened together; (g) in failing to have sufficient, sound and secure crossties to give necessary support to the track; (h) in that the flanges of the wheels of the cars were defective, worn out and unsafe on said occasion."

There was no attempt to prove specifications "f," "g" and "h." We have already considered specifications "d" and "e." It remains to consider whether there was evidence tending to show wilfulness in the respects charged in specifications "a," "b" and "c."

The fact that the cab was derailed would, at most, be only presumptive evidence of some *negligent* act or omission, with respect to the track, the car or the management. The evidence makes it manifest that there was no wilful disregard of a passenger's right to use the cab in question. It had been inspected just before its use on the occasion in question and found to be in good condition. Four-wheeled caboose

cars had been in use for years by the defendant company. Two of plaintiff's witnesses thought it was an unsafe model for a high rate of speed, but, on the other hand, there was testimony from experts that the car was especially fitted for freight service, and that it was a standard on twelve or fourteen railroads in the country, including the Pennsylvania system. The cab was not intended for the use of passengers, and, as shown, the conductor impressed that fact upon passengers when he first became aware that they desired to ride therein. There was no evidence showing such frequent derailment of four-wheeled cabooses as distinguished from other patterns as to warrant defendant in being charged with recklessness in their continued use.

After a painstaking review of the record, we fail to find the slightest evidence tending to show any wilful misconduct of defendant causing the death of plaintiff's intestate, and it is our duty to set the judgment aside for error in submitting such issue to the jury and in permitting a verdict to stand based upon such a conclusion.

II. We next consider the question of contributory negligence.

The Court refused to give the jury the following instructions as requested by defendant's counsel:

"It is negligence *per se* for a passenger to ride on top of a caboose car, except in an emergency requiring it, and if his act in so doing causes his injury or contributes thereto as a proximate cause, he cannot recover."

"It is negligence *per se* for a passenger to ride on top of a caboose car when there is a regular passenger car provided for passengers, and if the passenger's riding on top of the caboose car causes his injury or contributes thereto as a proximate cause, he cannot recover."

"If a passenger goes into a car provided for passengers and afterwards leaves such car and goes in and upon the top of a caboose car, a place of obvious danger to any man in his senses, and not intended for passengers, and he is injured by

reason of his being on top of said car, which injury would not have occurred had he been in the car provided for passengers, he is guilty of negligence or contributory negligence, as a matter of law, and cannot recover."

These requests do not assume as a fact any matter in issue and left to the jury to determine whether McLean's riding on top of the caboose contributed to his death as a proximate and concurring cause, and the principle of law contended for by them was not placed before the jury in the instructions given.    We think it was error to refuse the requests.

The authorities generally hold that if a passenger, without an emergency excusing it, rides in a place of obvious danger, which he knows, or by the exercise of ordinary care ought to know, is not provided for passengers, and such act contributes as a proximate cause to his injury, he is guilty of contributory negligence and cannot recover.

*Pennsylvania, etc., R. R.* v. *Langdon,* 37 Am. Rep., 657; *Houston, etc., R. R.* v. *Clemmons,* 40 Am. Rep., 799; *Bon* v *Ry., etc.,* 41 Am. Rep., 127; *Kentucky, etc., R. R.* v. *Thomas, Administrator,* 42 Am. Rep., 209; *Little Rock, etc., R. R.* v. *Miles,* 48 Am. Rep., 10; *Florida, etc., Ry.* v. *Hirst,* 32 Am. St. Rep., 1; *Patterson* v. *Central, etc., R. R.,* 11 S. E. Rep., 873; *Asbury* v. *Charlotte, etc., Ry.,* 34 S. E. Rep., 657; *Railroad* v. *Jones,* 95 U. S., 436, note; 61 Am. St. Rep., 90; 4 Elliott on Railroads, 1632; 6 Cyc., 652; 5 Ency. Law, 2d ed., 674.

This view does not at all conflict with *Zemp* v. *R. R.,* 9 Richardson, 84, which held that under the circumstances of that case the question of contributory negligence was for the jury.    Zemp, when injured, was standing on the platform of the passenger coach without knowledge that it was a prohibited place.    The train had stopped at a point where the stages had been in the habit of taking up passengers; the conductor left the cars to inquire whether they should stop there as heretofore, or proceed further; the passengers, seeing one stage coach and persons and horses in the woods at this point, supposed that they had gone as far as they

could on the railway; many arose from their seats and several got on the platforms, amongst the rest the plaintiff, who got on the rear platform of the forward car. The halt was but for a few minutes, and as the conductor ordered the train to proceed, the plaintiff stepped on the forward platform of the hindmost car. In a few moments the engine, tender and baggage car were derailed, due to negligent construction of the track, the passenger cars were jammed together and the body of Zemp was caught in the wreck of the two platforms.

It will be observed that Zemp went upon the platform while the car was at rest, for the purpose of disembarking at the usual stopping place. His standing there for a few moments after the car suddenly moved forward, having no knowledge that it was a prohibited place, could not be held contributory negligence as matter of law.

In connection with the foregoing, we will consider the question whether there was error in refusing to direct a verdict on the ground that the only conclusion of which the evidence is susceptible is that plaintiff was guilty of contributory negligence.

All *questions* or *issues* of fact are for the jury, but when the facts upon which the case must turn are undisputed, or conclusively established, and they admit of but one inference, the question is one of law, since there is no issue of fact, and the Court not only may, but when requested must direct the jury as to the proper conclusion. *Jarrell* v. *R. R. Co.,* 58 S. C., 495, 36 S. E., 910; *Lyon* v. *Ry.,* 77 S. C., 344, 58 S. E., 12.

The plaintiff's intestate was a graduate of a college and a very intelligent and energetic young man. Having a seat in the passenger coach, he left the same, without excuse or necessity, and went on top of a freight cab and rode there until precipitated therefrom to his death. If it be conceded that he went upon the cab at the suggestion of a mere brakeman, of which there is no evidence, and it be conceded that the conductor saw him while eating watermelon on top of the detached caboose during the long stop at Lumber, a fact

positively denied by the conductor, and sought to be estab-
lished by showing that he could have seen him had his atten-
tion been directed to that end, still the plaintiff's intestate
was guilty of gross negligence in remaining on top of the
car and riding thereon.   To ride thus on a freight cab is
a danger so obvious that a prudent man should not take the
hazard unless some reasonable necessity compels.   There
was no emergency in this case and he took the risk from
motives of pleasure.   Neither the suggestion of a mere
brakeman to go there nor the failure of the conductor to
warn, if he saw him there, engaged in sport while the car
was at rest and detached, can excuse the negligence of the
passenger in remaining and riding in a place not provided
for passengers and of such obvious danger.

The cases cited above show that such is and ought to be
the law.   The duty of a carrier of passengers demands that
he exercise the highest degree of care for the safety of pas-
sengers, but there is a corresponding duty on the part of the
passenger to exercise at least ordinary care for his own
safety.   Without this cooperation on the part of the pas-
senger, the carrier can never carry out efficently the rules
provided for safety.   The rules of the defendant company
forbade a passenger riding even inside the cab, and the
conductor made a reasonable effort to notify passengers of
it and to enforce it.

If the unfortunate McLean, though present, failed to hear
the warning, of which there is no evidence, still it was so
manifestly hazardous for him to ride on top of the cab,
where no reasonable man contemplates that a passenger will
ride, except in a great emergency, that his act must be held
negligent.

In this State, where the doctrine of comparative negli-
gence is not recognized and where it is only necessary, in
order to defeat a recovery, to show some negligence of
plaintiff directly contributing as a proximate cause to the
injury, and without which it would not have happened, we
are bound to hold, upon the most favorable view of the testi-

mony in behalf of plaintiff, that her intestate's negligence contributed as a proximate cause to his injury. The undisputed testimony is that no one in the passenger coach received the slightest injury, as that car was in no wise affected by the derailment of the cab. So far as the evidence shows, no one was injured except those riding on top of the caboose. Hence, it is manifest that if plaintiff's intestate had occupied the passenger coach, where he should have been, he would not have been injured.

It is contended that to make the negligence of a person a proximate cause, he must *do* something, and that just passively, though negligently, being where the stroke fell, cannot be a proximate cause, as, by way of illustration, in Hunter's case, 72 S. C., 336, 51 S. E., 860, the passenger *walked* off the moving train; in Jarrell's case, 58 S. C., 491, 36 S. E., 910, the passenger *stepped* off a train standing over a trestle; in Lyon's case, 77 S. C., 328, the employee was uncoupling a car in a negligent and dangerous manner. This contention cannot be sustained. In *Sanders* v. *Mfg. Co.,* 71 S. C., 63, 50 S. E., 697, the Court declared: "An attempt to make a line of separation between positive and negative negligence—between active negligence and lack of vigilance—would involve the courts in distinctions not only difficult and intricate, but highly artificial and unsound."

An examination of the cases which hold a passenger guilty of contributory negligence, by riding in an exposed and prohibited place, will show that the passenger's negligence placed him in a *position* in which the negligence of the carrier, operating in connection with the negligent position of the passenger, produced the injury.

This is not a case in which the negligence of the passenger was a remote cause in the chain of causation, or a mere condition upon which the carrier's negligence operated as an efficient cause, but is a case in which the negligence of the passenger, riding in an exposed and prohibited place, operated directly and concurrently with the negligence of the

carrier, and without which the injury would not have happened.

These views render it unnecessary to further consider the exceptions.

The judgment of the Circuit Court is reversed

July 25, 1908.   PER CURIAM.   After careful consideration of the within petition, the Court is satisfied that no material matter of law or fact has been overlooked or disregarded.

It is, therefore, ordered that the petition be dismissed and the stay of remittitur be revoked.