ATLANTIC COAST LINE R. CO. v. FARMER.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1909.)

No. 824.

1. COURTS (§ 366*)—INJURIES TO SERVANT—FELLOW SERVANTS—WHAT LAW GOVERNS.

In an action in a federal court for injuries to a servant of a railroad company, whether plaintiff and the engineer, by whose negligence plaintiff was injured, were fellow servants, depends on the law of the state where the accident occurred.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 326; Dec. Dig. § 366.*

What law governs master's liability for injuries to servant, see note to Mexican Cent. Ry. Co. v. Jones, 48 C. C. A. 232.]

2. MASTER AND SERVANT (§ 196*)—INJURIES TO SERVANT—FELLOW SERVANTS.

Under the law of South Carolina, whether employés are fellow servants is to be determined, not by the department in which the servants are engaged, but by the relations they sustained to each other at the time of the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 486–488; Dec. Dig. § 196.*

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MASTER AND SERVANT (§ 264*)---INJURIES TO SERVANT---NEGLIGENCE---ISSUES AND PROOF.

Where, in an action for injuries to a subforeman in a railroad repair yard by being crushed by the sudden backing of the engine as plaintiff was chaining two defective cars, the complaint did not allege any negligence of the foreman in not preventing the engine from moving, but the proof indicated that the sole cause of the accident was the negligence of the engineer in backing the engine without signal notwithstanding a signal to remain stationary, plaintiff was not entitled to have the case submitted to the jury on the theory that the foreman was negligent in permitting the engine to move back after directing plaintiff to go between the cars, under the South Carolina law that plaintiff cannot rely on a cause of negligence not alleged as a basis of recovery.

[Ed. Note.---For other cases, see Master and Servant, Cent. Dig. § 875; Dec. Dig. § 264.*]

4. TRIAL (§ 169*)---DIRECTION OF VERDICT.

Under the law of South Carolina, as well as in the federal courts, it is the duty of the trial judge to direct a verdict where the evidence, with all inferences that the jury could justifiably draw therefrom, is insufficient to support a judgment for plaintiff, so that, if such a verdict were returned, it must be set aside.

[Ed. Note.---For other cases, see Trial, Cent. Dig. §§ 381-389; Dec. Dig. § 169.*]

Morris, District Judge, dissenting.

In Error to the Circuit Court of the United States for the District of South Carolina, at Florence.

Action by C. L. Farmer against the Atlantic Coast Line Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

On the 1st day of April, 1907, defendant in error instituted this action in the court of common pleas for Florence county, S. C., against plaintiff in error to recover the sum of $10,000 damages alleged to have been sustained by him as the result of certain personal injuries suffered while in the employ of the railroad company. The complaint alleged: That on August 2, 1906. while employed by the railroad company, defendant in error was directed by J. J. Brown, the railroad company's foreman in charge of the work, to chain together two cars; that while so engaged the "defendant, its agents and servants, negligently, willfully, and wantonly, without giving any warning to the plaintiff, caused its said engine to suddenly strike and move said cars together, thereby catching plaintiff between said cars, giving to him thereby grievous bodily injuries," etc. The railroad company duly filed its answer, wherein it set up a general denial, and further that the injuries to defendant in error were received by him as a result of his own contributory negligence. Within due time the plaintiff in error removed the cause from the state court into the Circuit Court of the United States for the District of South Carolina, and a trial was had, resulting in a judgment in favor of defendant in error for the sum of $5,000.

At the trial it appeared that Farmer, who was a subforeman in the car repair yard of the railroad company, on the afternoon of the accident, was engaged, along with others, in moving certain bad-order cars for the purpose of placing them in position for repairs. In the placing of these cars, a shifting engine was used. After the engine came around to shift the cars, Farmer got a chain and went between two of them to tie them together; they being bad-order cars with broken drawheads. At the time Farmer went between these cars, the engine was still, and he gave the engineer a signal not to move back. Just as he got between the cars, however, the engineer moved the engine back, catching him between the cars and mashing him in the chest. The foreman in charge at the time saw the engine when it began to move, and im-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mediately endeavored 'to stop it, but could not do so. It thus appears that Farmer's injuries were sustained as a result of the negligence of the engineer in running the engine backward when he had been signaled to stand still. Such being the facts, the attorneys for plaintiff in error requested that a verdict be directed in its favor, as the only reasonable conclusion to be drawn from the testimony was that Farmer's injuries resulted from the negligence of his fellow servant, the engineer. This motion was overruled by his honor, to which exception was duly taken. This refusal to direct a verdict, the refusal to charge that there was no negligence on the part of the foreman, the leaving to the jury the question of the foreman's negligence, to all of which exceptions were duly taken and noted, as appears by the bill of exceptions, constitute the basis of the assignments of errors.

P. A. Willcox (Willcox & Willcox and Henry E. Davis, on the briefs), for plaintiff in error.

J. W. Ragsdale, for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and MORRIS, District Judge.

PRITCHARD, Circuit Judge (after stating the facts as above). The first question to be determined is as to whether the injuries sustained by the defendant in error were due to the negligence of a fellow servant; in other words, whether such injuries resulted from the negligence of the engineer who was in charge of the shifting engine at the time the accident occurred. The question as to whether the engineer was a fellow servant of the defendant in error must necessarily depend upon the law relating to fellow servants as declared by the Supreme Court of South Carolina. The learned judge who heard this case below was of opinion that the engineer was a fellow servant of the defendant in error, and, in referring to this phase of the question before submitting this case to the jury, made the following statement:

"It seems to me that the plaintiff, when he received his injuries, was doing the work ordinarily done by a brakeman or any other laborer; he was not in a separate employment as a car repairer, for the work of repairing cars; he was doing the work ordinarily done by a brakeman, and the engineer and the plaintiff were engaged in the same occupation, or rather they were engaged in carrying out one purpose, that is, removing a disabled car from the place where it was to the repair shop where it was to be repaired, so that the plaintiff's case cannot fall under the section of the Constitution which provides against the negligence of a fellow servant engaged in another department of labor. (That I believe is the language of the Constitution.) If he had been a painter engaged in painting that car, standing on the track, and had been injured by the negligence of the engineer, in the circumstances, I would hold that he was in another department of labor, and therefore was not deprived of his remedy against the company. If he had been actually at work repairing the car, doing carpenter work on the car, and while so engaged was injured by an engine backing up against him, I think he would have a right to recover against the company, because of that fact (the negligence of a fellow servant engaged in a separate department of labor); but it looks to me, doing the work that he was, that is, attaching one car to another, that that was the work of a brakeman, and that the engineer was a fellow servant. That seems to be the result of the decisions in South Carolina, by which I am governed, * * *"

The portion of the South Carolina Constitution to which the court below refers is article 9, § 15, which reads as follows:

"Every employé of any railroad corporation shall have the same rights and remedies for any injury suffered by him from the acts or omissions of said corporation or its employés as are allowed by law to other persons not employés, when the injury results from the negligence of a superior agent or officer, or of a person having a right to control or direct the services of a party injured, and also when the injury results from the negligence of a fellow servant engaged in another department of labor from that of the party injured or of a fellow servant on another train of cars, or one engaged about a different piece of work."

The Supreme Court of South Carolina, in the case of Rutherford v. Southern Ry., 56 S. C. 446, 35 S. E. 136, in construing this section of the Constitution, said:

"It seems to us that the true construction of the constitutional provision above referred to is this: While it does not entirely deprive a railroad company, in a case like the present, from availing itself of the previously well-recognized defense that the injury complained of was the result of the negligence of a fellow servant, for which the company is not responsible, yet it does confine such defense within narrower limits than had been previously recognized; for it will be observed that the provision in question sets out with the declaration that every employé of a railroad company shall have the same rights and remedies for any injury sustained by him from the acts or omissions of such company, 'or its employés,' whether fellow servants or not, as are allowed to a person not an employé of such company; and, if the section had stopped at that point, then the effect, manifestly, would have been to entirely deprive a railroad company of the right to set up as a defense to an action like this that the injury complained of resulted from negligence of a fellow servant of the plaintiff, for which the company was not responsible. But the section does not stop at the point indicated, and, on the contrary, goes on to show in what cases an employé shall have the same rights and remedies as a person not an employé, as follows: (1) Where the injury results from the negligence of a superior officer or agent; (2) where it results from the negligence of a person having the right to control or direct the services of a party injured; (3) when it results from the negligence of a. fellow servant engaged in another department of labor, or on another train of cars, or one engaged in a different piece of work. So that, in all other cases not falling under either of the classes above indicated, the law upon the subject of the defense of fellow servant remains the same as it was before."

In this case it appears that the engineer and the defendant in error were working under the direction of Brown, who was foreman in the repair yard. The defendant in error, while on the witness stand, testified as follows:

"Q. Who had entire charge of that yard? A. J. J. Brown.
"Q. Who directed all the services of all the employés over there? A. J. J. Brown.
"Q. Who employed you to work for the Atlantic Coast Line? A. J. J. Brown."

In the case of Lyon v. Charleston & W. C. Ry., 77 S. C. 336, 58 S. E. 15, the court said:

"Assuming that the engineer was the offending servant, through whose negligence the plaintiff was injured, the whole evidence shows that, in accordance with the well-understood custom, the master had intrusted to the conductor, and not the engineer, the duty of giving orders for the shifting and coupling of cars, and there was no evidence that the conductor was absent and the train in charge of the engineer. Therefore, in carrying out the conductor's orders, the plaintiff was not at the time under the engineer, as a person having the right to direct or control his services, but was under the conductor, and hence was a fellow servant of the engineer on the same train."

However, it is contended by counsel for defendant in error that the defendant in error and the engineer were engaged in different departments of labor. The defendant in error, on cross-examination, among other things, testified as follows:

"Q. You don't know the name of the engineer? A. Well, Parker. I have heard since his name was Parker.

"Q. He was on the engine if that was his name? A. Yes, sir.

"Q. And he was there ready to move these cars? A. Yes, sir.

"Q. And you were all engaged in moving cars, to couple them up, and to get them out of the way? A. Yes, sir.

"Redirect:

"Q. While you all were engaged in coupling cars, did he have anything to do with the coupling? A. No, sir.

"Q. Did you have anything to do with that shifting engine? A. No, sir.

"Q. Did you have anything to do with his work, or he with yours? A. Only as he would come in and get the cars and carry them out of the yard.

"Q. You were instructed to go in there and make the coupling? A. Yes, sir.

"Q. And his work was in a different department? The shifting engine? A. Yes, sir.

"Q. And you were there to perform the orders under J. J. Brown? A. Yes, sir.

"Q. And he had nothing to do with your work? A. No, sir."

Then he was again cross-examined by Mr. Willcox, of counsel for plaintiff in error, as follows:

"Mr. Willcox: Q. Did you mean by that he did not couple cars? A. No, sir.

"Q. And he did not work on cars? A. No, sir.

"Q. That is the difference you describe between your work and his? A. He was an engineer.

"Q. But that is the difference you are describing between your work and his? A. Yes, sir."

While it is true that the engineer and the defendant in error were employed by different officials of the railroad company, this could not affect the relations they sustained to each other at the time of the accident.

In view of the decisions of the Supreme Court of South Carolina, we think that the question of fellow servant is not to be determined by the department to which the servant belonged. The true test seems to be as to the relations they sustained to each other at the time of the accident. In the case of McDaniel v. C. & W. C. Ry. Co., 70 S. C. 95, 49 S. E. 2, a roadmaster, who was in the department of the engineer of roadways, sustained an injury as the result of the negligence of a conductor, who was in the department of the trainmaster, at a time when they were engaged in the common undertaking of removing a wreck, and a nonsuit was ordered. The opinion in that case is very full and contains a clear and intelligent discussion of this phase of the subject. It reads as follows:

"This action for damages rested on evidence to this effect: While plaintiff was engaged as roadmaster in clearing a wreck from defendant's roadway, the other portion of the work train ran against the detached flat car on which he was standing with such violence that he was thrown from the car and injured. The work train was operated by a conductor and engineer. Plaintiff, as roadmaster, worked under the direction of the engineer of the railroad, and the conductor of the work train ran his train under orders of the trainmaster; but the plaintiff was familiar with the rules of the railroad com-

pany, which required him 'to attend in person all accidents' on his division, and provided that 'conductors and engineers of work trains shall receive instructions from the roadmaster in regard to work to be done by their train.' On this occasion, plaintiff was actually left by a superior officer in charge of the entire work of removing the wreck. Subsequently, he and the conductor of the work train, of their own motion, agreed on a division of the work, and in pursuance of the agreement the work train was parted so that each should have some of the cars. The locomotive was attached to the cars the conductor was using. The accident occurred from these cars being moved violently without warning against the car which the plaintiff was using and on which he was standing.

"The Circuit Judge ordered a nonsuit on the ground that, if the injury was due to negligence, it was the negligence of a fellow servant. The plaintiff's exceptions, as we understand, really involve three propositions which he undertakes to sustain: First, the conductor operating the train was the superior of the roadmaster in the conduct of the work, and had a right to direct or control his services. There is no evidence to sustain this statement; on the contrary, the plaintiff positively confutes it. Second, the plaintiff and the conductor and engineer were engaged in different departments of labor. In the mere running of the work train from place to place, doubtless, to avoid interference with other trains, the conductor received orders from the trainmaster; but, when actually at work, the rules placed the conductor and crew under the directions of the roadmaster and in his department of labor. Third, the plaintiff and the conductor and engineer were engaged about a different piece of work. Obviously removing different pieces of the wreck did not constitute being engaged about different pieces of work, within the meaning of section 15, art. 9, of the Constitution.

"The common enterprise—the piece of work—was the removal of the wreck. The engine and cars were instrumentalities provided for the purpose, to be used by the conductor and engineer under the plaintiff as their superior, just as jack screws and shovels were to be used by others, and the negligent moving of the train stands on the same footing as would the negligent placing of a jack screw. But aside from the rules of the company and the other evidence indicating that the conductor and engineer were engaged as fellow servants about the same piece of work, the plaintiff testified that he voluntarily agreed with the conductor as to what part of the wreckage each should remove, and the accident occurred while they were working about the common enterprise as fellow servants in conjunction with each other in pursuance of the agreement. Of the many cases on the subject it is only necessary to refer to Wilson v. Railway Co., 51 S. C. 79, 28 S. E. 91, and Koon v. Railway Co., 69 S. C. 101 [48 S. E. 86].

"The judgment of this court is that the judgment of the Circuit Court be affirmed."

As we have said, the court below, after a clear analysis of the evidence, reached the conclusion that the engineer was a fellow servant of the defendant in error; but it appears that he refused to direct a verdict on the ground that, although the engineer was negligent, still it should be left to the jury to say whether Brown, the foreman, was negligent in permitting the engineer to move back after directing Farmer to go between the cars. In referring to this phase of the question, the court said:

" *   *   * But since I reached that conclusion, another view has come into my mind. I am not sure whether it is sound or not. I will hear argument, and that is: J. J. Brown was the foreman of the repair shops at the yards, and this plaintiff was under his orders. The engineer likewise was subject to his orders. Now, if he was negligent, the company is liable. The company is not liable, that is my view, from the negligence of the engineer, for he was a fellow servant; but if there was negligence of the foreman, if he failed to do what he ought to have done in any way, and could have prevented this accident by due and reasonable care, it seems to me that the company is re-

sponsible, and that I ought to leave that question to the jury. Whether there is any evidence whereby the jury can impute negligence to the foreman, Brown, it is a very nice question. Both the engineer and the plaintiff were subject to Brown's orders, and when Brown directed the plaintiff to go and fasten those cars together with a chain, whether it was not his duty to so control that engine as to prevent his employé being injured while conducting that operation which he directed is a question, it seems to me, that I ought to leave to the jury."

Thus it will be seen that the determination of this matter turns solely upon the question as to whether the injuries sustained were due to the negligence of Brown, the foreman. It is admitted that Brown directed the defendant in error to go in between the cars (and, at the time of doing so, the cars were standing still); but, so far as we are able to find, the engineer, all of a sudden, without instructions from Brown, or any one else, began to move the cars, and as a result of which the injuries were sustained. Brown was a witness, and, among other things, said:

"Q. State the place where the accident occurred, generally the place. A. The place where the accident occurred was in the back yard at the Florence shops. The engine came around to do our shifting as usual in the afternoon, and I am not certain, but it strikes me that I had just come in from a wreck, been in about an hour, and I walked down through the yard. Mr. Farmer was attending to his business, assistant foreman. I noticed that a good many of the drawheads in the cars were broken out, and I said to Mr. Farmer, 'You will have to get some chains to chain those cars up so we can have them moved,' and I stopped on the engineer's side, just opposite the car that was going to be chained up, about halfway of the car, and about that time Mr. Farmer came up with the chains. Just before he attempted to go between the cars, he signed the engineer, gave him a signal not to move back, and the engineer while he was still, he gave him this (indicating the signal) as an extra precaution not to move back, and just as he stepped between the cars, I suppose, well, half a minute or about a minute, something like that, I noticed that the car commenced coming back that the engine was coupled to, and I signed him down to go back about six feet, I guess about three feet space between the cars when Mr. Farmer went back and the cars came back about six feet I guess, caught Mr. Farmer between them, and just as soon as I saw the car moving, then I signed him down and signed him ahead right quick, and as he fell out Mr. Farmer just made one step out between the cars and fell right on the ground.

"Q. When the engineer came back, did you sign him back on Mr. Farmer? A. No, sir; I signed him down quick, just as soon as I seen the car moving.

"Q. And he still came on? A. Yes, sir."

The complaint in this case is based upon the theory that Brown acted properly in telling Farmer to go between the cars, which was a necessary piece of work, and it is specifically charged that other agents of the defendant company moved the train at the time the injury was incurred. Paragraph 4 of the complaint, among other things, contains the following allegations:

"That on August 2, 1906, while the plaintiff was engaged in said work and was on defendant's tracks and between said cars as directed by his superior officer, J. J. Brown, the defendant, its agents and servants, * * * caused its said engine to strike and move said cars together, thereby catching plaintiff between said cars."

There is no allegation here to the effect that Brown was negligent in not preventing the engine from moving, while, on the other hand, the sole charge is that the defendant, its agents and servants, caused

the engine to move backward. There is no allegation that Brown was operating the engine, or that he was directing its operation, while, on the other hand, the proof shows that the engineer was in charge of the engine, and was the only one who could cause it to move. Under the ruling as laid down by the Supreme Court of South Carolina, the defendant in error not having alleged that Brown was negligent in not controlling the engine at the time that Farmer was making the coupling, he was thus precluded from proving such negligence as a basis for recovery. In the case of Goodwin v. Railroad Co., 76 S. C. 557, 57 S. E. 530, the rule is thus stated:

"Where the complaint alleges specific acts of negligence, the plaintiff is restricted to proofs of such acts of negligence."

In the case of Brown v. Spartanburg U. & C. R. R. Co., 57 S. C. 433, 35 S. E. 732, the court, in discussing this question, said:

"It seems to us that the ruling of the circuit judge is fully sustained by our own case of Glenn v. Railroad Co., 21 S. C. 466, where the negligence alleged was in failing to furnish an engine, running at night, with a headlight; and the court said that, while there was quite sufficient evidence to show negligence in that respect, yet, there being no evidence tending to show that the injury complained of resulted from such negligence, there was no error in granting the nonsuit. To the same effect, see Fell v. Railroad Co., 33 S. C. 198, 11 S. E. 691, and Jenkins v. McCarthy, 45 S. C. 278, 22 S. E. 883, where Mr. Justice Pope, in delivering the opinion of the court, well said: 'It would be hazardous to litigants, when brought into court to answer for a specified negligence, to open wide the door to proof of any kind of negligence.'"

This view is also sustained in the case of Jenkins v. McCarthy, 45 S. C. 278, 22 S. E. 883.

While such is the rule in that state, it is not material in this instance, inasmuch as there is not a scintilla of evidence to show that the injuries sustained by defendant in error were due to the negligence of Brown, the foreman. As we have already said, at the time that the foreman directed defendant in error to go between the cars and do the work in question, the cars were standing still, and the foreman had seen defendant in error signal the engineer not to move back—giving at the time an extra precaution not to move back—but that, within "half a minute or about a minute" after he stepped between the cars, the cars began to move back. Then it was that the foreman signed the engineer down and did all he could to prevent the engineer from running the car back in the manner described. Inasmuch as the foreman had seen defendant in error signal the engineer to remain where he was, and observing that there was ample space for him to get between the cars at the time, it is difficult to understand upon what theory he could be required to do more than he did on that occasion. If, after defendant in error went between the cars, the foreman had, without warning to defendant in error, signaled the engineer to move the train back, then, undoubtedly, the injuries would have been due to the negligence of the foreman; or if, when he saw the engineer moving back, he could have prevented the injuries by giving the engineer a proper signal, and failed to do so, that would also have been negligence on his part. But the evidence shows that, the moment he saw the engine beginning to move the cars, he at once signaled the engineer to stop,

and used all means in his power to prevent the injury. It seems to us that he did all that could have been required of one similarly situated.

Witness Farmer, in referring to the cars at the time he went between the same, said:

"Q. When you went in between the cars to chain it, was any part of the train in motion? A. No, sir.

"Q. Was the engine moving or not? A. No, sir; it was still.

"Q. How long had it been still? A. It had been still for some time. I could not say exactly how long.

"Q. At the time Mr. Brown gave you the order to go in there, could he see the engine? A. Yes, sir; he stood right at it until I got back with the chain.

"Q. You and he were standing very near together, and he could see the entire train? A. Yes, sir.

"Q. And he saw that the engine was still? A. Yes, sir.

"Q. And he ordered you to go in there and couple it when the engine was still? A. Yes, sir."

It seems to us, in view of the undisputed testimony, that the foreman did all that human foresight could suggest to prevent the accident.

Under these circumstances, we think the presiding judge was in error in permitting the jury to decide as to whether or not the foreman (Brown) was negligent.

We have examined the case of Lyon v. C. & W. C. Ry. Co., 77 S. C. 328, 58 S. E. 12. That case is very much in point. There, the plaintiff was employed as a coupler, and was injured while carrying out the orders of the conductor to couple two cars. The evidence shows that the injury was due to the negligence of the engineer, and, in referring to the point which we are now considering, the court said:

"The general rule in this state and elsewhere is that an engineer is not ordinarily the representative of the master, but is the fellow servant of the train hands—all being under the orders of the conductor, as the representative of the master. The plaintiff in this instance testified, however, that, at the time of his employment as a flagman, he was told that he must obey the orders of the conductor or the engineer, and that, accordingly, he did obey, to use his own words, 'the conductor when he needed my services and the engineer when he needed my services.' The Constitution provides: 'Every employé of any railroad corporation shall have the same rights and remedies for any injuries suffered by him from the acts or omissions of said corporation as are allowed by the law to other persons who are not employés, when the injury results from the negligence of a superior agent or officer, or a person having a right to direct or control the services of a party injured, and also when the injury results from the negligence of a fellow servant engaged in another department of labor from that of the party injured, or of a fellow servant on another train of cars, or one engaged about another piece of work.'

"Under this constitutional provision, in view of the plaintiff's evidence as to obeying the orders of the engineer, the question arises whether in this case the engineer was a superior agent or officer, or person having the right to control or direct the services of the plaintiff. Under a constitutional provision identical with ours, the Supreme Court of Mississippi held an engineer not to be a person having the right to control or direct the services of a brakeman. Evans v. Railway [70 Miss. 527] 12 South. 581. In this state, the rule adopted is thus clearly stated in Brabham v. Tel. Co., 71 S. C. 56, 50 S. E. 716, and is quoted and approved in Martin v. Royster Guano Co., 72 S. C. 237, 243, 51 S. E. 680: 'In determining who are fellow servants, the test or rule in this state is not whether the servants are of different grade, rank, or authority, one of them having the power to control and direct the services of the other, but the test is in the character of the act being performed by the offending servant, whether it was the performance of some duty the master owed to the injured servant, the performance of which duty the master had intrusted

to the offending servant. In the case under consideration there was no duty resting upon the defendant to give notice to the plaintiff, as the danger was not hidden or unusual, and the plaintiff had knowledge thereof.' Assuming that the engineer was the offending servant, through whose negligence the plaintiff was injured, the whole evidence shows that, in accordance with the well-understood custom, the master had intrusted to the conductor, and not the engineer, the duty of giving orders for the shifting and coupling of cars, and there was no evidence that the conductor was absent and the train in charge of the engineer. Therefore, in carrying out the conductor's orders, the plaintiff was not at the time under the engineer, as a person having the right to control or direct his services, but was under the conductor, and hence was a fellow servant of the engineer on the same train."

The evidence in this case, as we have stated, shows that Brown, the foreman, was present, and that defendant in error was acting strictly under his directions. The case from which we have just quoted is based upon the assumption that the conductor was present at the time the engineer and coupler were engaged in making the coupling, and that the coupler was carrying out the orders of his superior, the conductor. Here, we have a case in which a coupler, acting under the directions of the conductor, goes between a train of cars for the purpose of making a coupling, and, while there, the engineer, acting in his capacity as engineer, without receiving an order to do so from the conductor, moves the train. Thus, we have a case practically on all fours with that case, and the Supreme Court of South Carolina held that, if the act of the engineer caused the accident, the doctrine of injury by a fellow servant obtained, and there could be no recovery.

Under the circumstances in this case, did the presiding judge err in refusing to direct a verdict in favor of the defendant below? Under the law in South Carolina, where only one reasonable inference can be drawn from the testimony, it is the duty of the court to direct a verdict. In the recent case of McLean v. A. C. L. R. Co., 81 S. C. 100, 61 S. E. 900, 1071, 18 L. R. A. (N. S.) 763, 128 Am. St. Rep. 892, decided July 25, 1908, the court said:

"All questions of issues of fact are for the jury; but when the facts upon which the case must turn are undisputed or conclusively established, and they admit of but one inference, the question is one of law, since there is no issue of fact, and the court not only may, but when requested must direct the jury as to the proper conclusion. Jarrell v. Railroad Co., 58 S. C. 495, 36 S. E. 910; Lyon v. Railway, 77 S. C. 344, 58 S. E. 12."

This rule is in accordance with the rule which prevails in the federal courts. In the case of Randall v. B. & O. R. R. Co., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003, the court said:

"It is the settled law of this court that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant."

We have carefully considered the cases relied upon by defendant in error, but do not think that the rulings announced therein apply to the case at bar.

For the reasons herein stated, the judgment of the court below is reversed, and the cause remanded, with instructions to proceed in accordance with the views herein announced.

Reversed.

MORRIS, District Judge (dissenting).   I am not able to concur with the majority of the court.

When Farmer, by direction of the foreman in charge, went underneath the broken cars to connect them with a chain, he put himself by order of the foreman in a dangerous place, where he was helpless. He had a right to look to the foreman for protection.   The foreman was standing close at hand in position in which he could give that protection if he was watchful.   An engine which was at a little distance began to move toward the broken cars, and before it stopped struck them, and Farmer was caught between them and injured.

It seems to me that from all the circumstances of the case there was ground for the finding of the jury that the foreman was inattentive and negligent at a time when he should have given his best attention, and that he could, by prompt action, have signaled the engineer to stop in time to have prevented the accident.   If, as the jury found, the foreman was negligent, then the railroad company was responsible, and the verdict was justified.