# RANDALL *v.* BALTIMORE AND OHIO RAILROAD COMPANY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF WEST VIRGINIA.

Argued November 16th, 1883.—Decided December 10th, 1883.

*Evidence—Master and Servant—Practice—Railroad—Statutes—Verdict.*

When the evidence given at the trial, with all the inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court may direct a verdict for the defendant.

Statement of Facts.

A ground switch, of a form in common use, was placed in a railroad yard, in a space six feet wide between two tracks; the lock of the switch was in the middle of the space; and the handle, when lying flat extended to within a foot of the adjacent rail, and could be safely and effectively worked by standing in the middle opposite the lock, using reasonable care. The brakeman of a train on one of the tracks, while working at the switch, standing at the end of the handle, was struck by an engine on the other track: *Held*, that there was no such proof of fault on the part of the railroad corporation, in the construction and arrangement of the switch, as would support an action against it for the injury.

A brakeman, working a switch for his train on one track in a railroad yard, is a fellow servant with the engineman of another train of the same corporation upon an adjacent track; and cannot maintain an action against the corporation for an injury caused by the negligence of the engineman in driving his engine too fast and not giving due notice of its approach, without proving negligence of the corporation in employing an unfit engineman.

A statute which provides that a bell or whistle shall be placed on every locomotive engine, and shall be rung or sounded by the engineman or fireman sixty rods from any highway crossing, and until the highway is reached, and that " the corporation owning the railroad shall be liable to any person injured for all damages sustained " by reason of neglect so to do, does not make the corporation liable for an injury caused by negligence of the fireman in this respect, to a fellow servant.

This is an action against a railroad corporation by a brakeman in its employ, for personal injuries received, while working a switch, by being struck by one of its locomotive engines.

The declaration, in seven different counts, alleged as grounds of action that the defendant negligently constructed and kept its tracks and switches in a defective and dangerous condition; that the defendant, by one of its agents and servants, who was at the time unskilful, negligent and unfit to perform the business and employment that he was engaged by the defendant to perform, and who was engaged in a service for the defendant other and different from the service in which the plaintiff was engaged, and whose negligence, unskilfulness and unfitness were known to the defendant, negligently propelled one of its locomotive engines against and over the plaintiff; that this was done without sounding any whistle or ringing any bell, as required by the laws of the State of West Virginia; and that the defendant neglected proper precautions in the selection and employment of its agents and servants.

A statute of West Virginia provides that " a bell or steam whistle shall be placed on each locomotive engine, which shall be rung or whistled by the engineer or fireman at the distance of at least sixty rods from the place where the railroad crosses any public street or highway, and be kept ringing or whistling until such street or highway is reached," under a penalty of not exceeding $100 for each neglect; and that " the corporation owning the railroad shall be liable to any person injured for all damages sustained by reason of such neglect." Stat. of W. Va. of 1873, ch. 88, § 31.

The evidence introduced at the trial proved the following facts to the satisfaction of the court : The injury occurred at night, at a place where, as the plaintiff himself testified, " there was one network of tracks," in the defendant's railroad yard, near the junction of a branch road with the main road, and about ten rods from a highway crossing. The plaintiff had previously been employed on another part of the road. On the night in question, in the performance of his duty as a brakeman on a freight train, he unlocked a switch which enabled his train to pass from one track to another; and he was stooping down, with his lantern on the ground beside him, to unlock the ball of a second switch to let the engine of his train pass to a third track, when he was struck and injured by the tender of another freight engine, in no way connected with his train, backing down on the second track. The tender projected ten inches beyond the rail. The distance between the adjacent rails of the second and third tracks was about six feet. The second switch was a ground switch of a kind in common use, the lock of which was in the centre of the space between the two tracks; and the handle of which was about two feet long, and when lying flat extended towards either track, and when thrown one way opened the switch, and when thrown the other way closed it. The switch could be worked efficiently and safely by a man standing midway between the two tracks, using reasonable care. It could not be safely worked by standing at the end of the handle while an engine was coming on the track next that end. Upright switches could not be used at a place where the tracks were so near

together, without seriously interfering with the moving and management of the trains.

The plaintiff testified that he had never worked a ground switch before, and that the first switch was an upright switch. But he admitted on cross-examination that the two kinds of switches were unlocked in the same manner, and the other evidence established beyond doubt that the first switch was also a ground switch.

A single witness, who had been a brakeman, called for the plaintiff, in answer to a question, often repeated, of his counsel, whether that was a safe and proper switch to be used at that point, testified that he could not say it was a very safe place at that time there; that he thought that was not a proper kind of switch, and an upright switch would have been more convenient to handle; that he did not think it was a very safe ball there; that he thought it was not a safe ball there; and that it could not be unlocked without danger while an engine or train was coming upon the other track.

The engine which struck the plaintiff was being driven at a speed of about twelve miles an hour, by an engineman in the defendant's employ, and there was evidence tending to show that it had no light except the headlight, and no bell, and that its whistle was not sounded.

There was no evidence that the tracks were improperly constructed, or that the engineman was unfit for his duty. The other grounds of action relied on were improper construction and arrangement of the switch; negligence of the defendant in running its engine, by an unskilful and negligent engineman, alleged to have been engaged in a different service for the defendant from that in which the plaintiff was engaged; and omission to comply with the requirements of the statute of West Virginia.

At the close of the whole evidence (of which all that is material is above stated), the court directed the jury to return a verdict for the defendant, because the evidence was such that if a verdict should be returned for the plaintiff, the court would be compelled to set it aside. A verdict for the defendant was accordingly returned, and the plaintiff sued out this writ of error.

*Mr. B. D. Dovener* for the plaintiff in error, cited *Hough* v. *Railway Co.*, 100 U. S. 213 ; *Chamberlain* v. *M. & M. R. Co.*, 11 Wis. 248 ; *N. O. Jackson & G. N. R. Co.* v. *Allbritton*, 38 Miss. 242 ; *Paulmier* v. *Erie R. R. Co.*, 5 Vroom, 151 ; *Nashville R.R. Co.* v. *Elliot*, 1 Coldw. (Tenn.) 611 ; *Haynes* v. *East Tenn. & Geo. Railroad*, 3 Coldw. 222 ; Wood on Master and Servant, sec. 357 ; Wharton on the Law of Negligence, secs. 211, 212, and 232a ; *Railroad Co.* v. *Fort*, 17 Wall. 553 ; *Ford* v. *Fitchburg R. R. Co.*, 110 Mass. 240.

*Mr. John K. Cowen* for the defendant in error.

Mr. Justice Gray delivered the opinion of the court. After reciting the facts as above, he said :

1. It is the settled law of this court, that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant. *Pleasants* v. *Fant*, 22 Wall. 116 ; *Herbert* v. *Butler*, 97 U. S. 319 ; *Bowditch* v. *Boston*, 101 U. S. 16 ; *Griggs* v. *Houston*, 104 U. S. 553. And it has recently been decided by the House of Lords, upon careful consideration of the previous cases in England, that it is for the judge to say whether any facts have been established by sufficient evidence, from which negligence can be reasonably and legitimately inferred ; and it is for the jury to say whether from those facts when submitted to them, negligence ought to be inferred. *Metropolitan Railway Co.* v. *Jackson*, 3 App. Cas. 193.

Tried by this test, there was no sufficient evidence of any negligence on the part of the railroad company in the construction and arrangement of the switch, to warrant a verdict for the plaintiff on that ground. The testimony of the plaintiff and of his witness was too slight. A railroad yard, where trains are made up, necessarily has a great number of tracks and switches close to one another, and any one who enters the service

of a railroad corporation, in any work connected with the making up or moving of trains, assumes the risks of that condition of things. Although it was night, and the plaintiff had not been in this yard before, his lantern afforded the means of perceiving the arrangement of the switch and the position of the adjacent tracks. The switch was of a form in common use, and was, to say the least, quite as fit for its place and purpose as an upright switch would have been. It could have been safely and efficiently worked by standing opposite the lock, midway between the tracks, using reasonable care; and it was unnecessary, in order to work it, to stand, as the plaintiff did, at the end of the handle, next the adjacent track.

2. The general rule of law is now firmly established, that one who enters the service of another takes upon himself the ordinary risks of the negligent acts of his fellow servants in the course of the employment. This court has not hitherto had occasion to decide who are fellow servants, within the rule. In *Packet Company* v. *McCue*, 17 Wall. 508, and in *Railroad Company* v. *Fort*, 17 Wall. 553, the plaintiff maintained his action because at the time of the injury he was not acting under his contract of service with the defendant; in the one case, he had wholly ceased to be the defendant's servant; in the other, being a minor, he was performing, by direction of his superior, work outside of and disconnected with the contract which his father had made for him with the defendant. In *Hough* v. *Railway Company*, 100 U. S. 213, and in *Wabash Railway Company* v. *McDaniels*, 107 U. S. 454, the action was for the fault of the master; either in providing an unsafe engine, or in employing unfit servants.

Nor is it necessary, for the purposes of this case, to undertake to lay down a precise and exhaustive definition of the general rule in this respect, or to weigh the conflicting views which have prevailed in the courts of the several States; because persons standing in such a relation to one another as did this plaintiff and the engineman of the other train are fellow servants, according to the very great preponderance of judicial authority in this country, as well as the uniform course of decision in the House of Lords, and in the English and Irish

courts, as is clearly shown by the cases cited in the margin.*
They are employed and paid by the same master. The duties
of the two bring them to work at the same place at the same
time, so that the negligence of the one in doing his work may
injure the other in doing his work. Their separate services
have an immediate common object, the moving of the trains.
Neither works under the orders or control of the other. Each,
by entering into his contract of service, takes the risk of the
negligence of the other in performing his service; and neither
can maintain an action for an injury caused by such negli-
gence, against the corporation, their common master.

The only cases cited by the plaintiff, which have any ten-
dency to support the opposite conclusion, are the decisions of
the Supreme Court of Wisconsin in *Chamberlain* v. *Milwaukee
& Mississippi Railroad Co.*, 11 Wis. 248, and of the Supreme
Court of Tennessee in *Haynes* v. *East Tennessee & Georgia
Railroad Co.*, 3 Coldw. 222, each of which wholly rejects the
doctrine of the master's exemption from liability to one servant

---

* *Farwell* v. *Boston & Worcester Railroad Co.*, 4 Met. 49 ; *Holden* v.
*Fitchburg Railroad Co.*, 129 Mass. 268 ; *Coon* v. *Syracuse & Utica Railroad
Co.*, 5 N. Y. 492 ; *Wright* v. *New York Central Railroad Co.*, 25 N. Y. 562 ;
*Besel* v. *New York Central Railroad Co.*, 70 N. Y. 171 ; *Slater* v. *Jewett*, 85
N. Y. 61 ; *McAndrews* v. *Burns*, 10 Vroom, 117 ; *Smith* v. *Oxford Iron Co.*,
13 Vroom, 467 ; *Lehigh Valley Coal Co.* v. *Jones*, 86 Penn. State, 432 ;
*Whaalan* v. *Mad River Railroad Co.*, 8 Ohio State, 249 ; *Pittsburgh, Fort
Wayne & Chicago Railway Co.* v. *Devinney*, 17 Ohio State, 197 ; *Slattery* v.
*Toledo & Wabash Railway Co.*, 23 Indiana, 81 ; *Smith* v. *Potter*, 46 Mich.
258 ; *Moseley* v. *Chamberlain*, 18 Wis. 731 ; *Cooper* v. *Milwaukee & Prairie
du Chien Railway Co.*, 23 Wis. 668 ; *Sullivan* v. *Mississippi & Mis-
souri Railroad Co.*, 11 Iowa, 421 ; *Peterson* v. *Whitebreast Coal Co.*, 50
Iowa, 673 ; *Foster* v. *Minnesota Central Railroad Co.*, 14 Minn. 277 ; *Ponton*
v. *Wilmington & Weldon Railroad Co.*, 6 Jones, N. C. 245 ; *Louisville
Railroad Co.* v. *Robinson*, 4 Bush, 507 ; *Mobile & Montgomery Railroad Co.*
v. *Smith*, 59 Ala. 245 ; *Hogan* v. *Central Pacific Railroad Co.*, 49 Cal. 128 ;
*Kielley* v. *Belcher Mining Co.*, 3 Sawyer, 500 ; *Hutchinson* v. *York, Newcastle
& Berwick Railway Co.*, 5 Exch. 343 ; *Bartonshill Coal Co.* v. *Reid*, 3 Macq.
266 ; *Bartonshill Coal Co.* v. *McGuire*, 3 Macq. 300 ; *Wilson* v. *Merry*, L. R.
1 H. L. Sc. 326 ; *Morgan* v. *Vale of Neath Railway Co.*, 5 B. & S. 570, 736 ;
S. C. L. R. 1 Q. B. 149 ; *Tunney* v. *Midland Railway Co.*, L. R. 1 C. P. 291;
*Charles* v. *Taylor*, 3 L. R. C. P. D. 492; *Conway* v. *Belfast & Northern Counties
Railway Co.*, Ir. R. 9 C. L., 498, and Ir. R. 11 C. L. 345.

for the negligence of another, and the first of which has been overruled by the later cases in the same State.

This action cannot, therefore, be maintained for the negligence of the engineman in running his engine too fast, or in not giving due notice of its approach.

3. The statute of West Virginia, on which the plaintiff relies, has no application to this case. There is no evidence that the engine which struck the plaintiff was about to cross a highway; and the main, if not the sole, object of the statute evidently was to protect travellers on the highway. *O'Donnell* v. *Providence & Worcester Railroad Co.*, 6 R. I. 211; *Harty* v. *Central Railroad Co.*, 42 N. Y. 468. It may perhaps include passengers on the trains, or strangers not trespassers on the line of the road. But it does not supersede the general rule of law which exempts the corporation from liability to its own servants for the fault of their fellow servants.

*Judgment affirmed.*