# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

WILLMARTH et al. v. CARDOZA.

(Circuit Court of Appeals, First Circuit. February 25, 1910.)

No. 849

**1.** MASTER AND SERVANT (§ 194*)—RISKS ASSUMED BY SERVANT—NEGLIGENCE OF FELLOW SERVANT—TERMINATION OF RELATION.

The implied contract of a servant to assume the ordinary risks of the service, including the risk of negligence on the part of fellow servants, does not end the moment the servant finishes his day's work, but continues until he ceases to be affected by such conditions and risks.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 383, 384; Dec. Dig. § 194.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

**2.** MASTER AND SERVANT (§ 194*)—RISKS ASSUMED BY SERVANT—NEGLIGENCE OF FELLOW SERVANT—TERMINATION OF RELATION.

Plaintiff was employed by defendant by the day in the construction of a building. After finishing a day's work, he went to a shed on the premises to get his coat, which he had left therein, and, finding it locked, he proceeded to defendant's office for a key, and after he again reached the shed, and while the door was being unlocked, he was struck and injured by a piece of rock thrown by a blast through the negligence of another employé of defendant. Held, that he was still defendant's servant, and a fellow servant of the one whose negligence caused his injury, and could not recover from defendant therefor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 383-384; Dec. Dig. § 194.*]

In error to the Circuit Court of the United States for the District of Rhode Island.

Action by Albert Cardoza against John Willmarth and others. Judgment for plaintiff, and defendants bring error. Reversed.

Walter B. Vincent and Ralph T. Barnefield (Alexander L. Churchill, on the brief), for plaintiffs in error.

A. B. Crafts (A. B. Patton, on the brief), for defendant in error.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

176 F.—1

LOWELL, Circuit Judge. The defendant in error, hereinafter called the plaintiff, sued the plaintiffs in error, hereinafter called the defendants, to recover damages for being hit with a stone fired negligently from a blast. At the trial the defendants requested the learned judge to instruct the jury to return a verdict for them, on the ground that the negligence charged against them was that of their employé, the plaintiff's fellow servant. The request was refused and the defendants duly excepted. The plaintiff admitted that this employé, who set off the blast, and whose negligence the plaintiff relied upon, was the plaintiff's fellow servant, provided only that the plaintiff himself was in the defendants' employ at the time of the accident. There was evidence of this man's negligence. The learned judge submitted to the jury the question of the plaintiff's employment, under instructions not objected to except as above stated. The jury returned a verdict for the plaintiff, and the defendants have brought the case to this court. The only assignment of error relied upon at the argument concerned the plaintiff's own employment at the time of the accident. The circumstances were not in dispute.

The plaintiff was a hod carrier working for the defendants at a daily wage. His day's labor was over at 5 o'clock, and at that time the "boss" called to the men to quit work. The plaintiff remained a few minutes, and, by order of the boss, covered with a cloth the masonry laid that day. He then descended the ladder from the building to the ground, and went to a shed, where he had hung up his coat before going to work that afternoon. This shed was not on the path leading directly from the building to the entrance of the lot on which the building stood. When the plaintiff reached the shed he found its door locked, and asked the boss carpenter to open it. With him the plaintiff went on still further to the defendants' office, where the boss carpenter told the timekeeper to give the key to the plaintiff, and told the plaintiff to bring back the key to the office after getting his coat. The plaintiff returned to the shed, where he met the night watchman. The latter was unlocking the door when the blast was blown, and a piece of rock hit the plaintiff, breaking his leg. The defendants contended that, as the facts were not in dispute, the court should itself have determined that the plaintiff was in the defendants' employ at the time of the accident. If there was evidence which warranted a finding that the plaintiff had already quitted the defendants' employment for the rest of the day, the verdict must stand.

The cases hold generally that a workman's employment does not cease at the instant his work time is over, that employment includes the incidents of employment, and that the workman is still his master's servant while he is gathering up his tools and adjusting his clothes after the day's work, and is leaving the place of his employment. Olsen v. Andrews, 168 Mass. 261, 47 N. E. 90; O'Neil v. Pittsburg R. R. (C. C.) 130 Fed. 204; Manville v. Cleveland & T. R. R., 11 Ohio St. 417; Ewald v. C. & N. W. R. R., 70 Wis. 420, 36 N. W. 12, 591, 5 Am. St. Rep. 178; Int. & G. N. R. R. v. Ryan, 82 Tex. 565, 18 S. W. 219; Higgins v. Hannibal & St. R. R., 36 Mo. 418, 432, the last being an extreme case. In Farwell v. B. & W. R. R., 4 Metc. 49, 38

Am. Dec. 339, which Sir Frederick Pollock calls the fountain head of later decisions concerning the doctrine of common employment that doctrine is rested upon an implied contract between master and servant. Quoting Tunney v. Midland R. R., L. R., 1 C. P. 291, 296, Pollock states the rule of common employment as follows:

> "A servant, when he engages to serve a master, undertakes, as between himself and his master, to run all the ordinary risks of the service, including the risk of negligence upon the part of a fellow servant when he is acting in the discharge of his duty as servant of him who is the common master of both."
> Pollock on Torts (Webb's Ed.) p. 117.

Is it to be supposed that implied contract and undertaking end suddenly at a fixed minute, while the servant is still surrounded by the conditions and risks of his employment, or that they continue until the servant has ceased to be affected by these conditions and risks? We think the latter conclusion is obviously correct. To adopt the former, whether in favor of the master or of the servant, would deprive the rule of its reason.

In the case at bar the plaintiff, indeed, did not dispute that his employment would have continued until he reached the highway, provided that he had walked there directly from the building. This concession is decisive of the case at bar. If the employment covers, not only the time during which the workman is engaged in his ordinary labor, but also a later time, during which he is passing from the surroundings of his employment into surroundings unrelated thereto, then this additional period will evidently be longer or shorter according to the circumstances. The situation and nature of the building may affect the time needed for leaving it. The tools which the workman uses may be more or less complicated and numerous. They may be easy or hard to put away for the night. That the workman may have to lay aside some of his clothes while working is plain. This may well be both for his employer's benefit and his own, like the travel in Kilduff v. Boston El. Ry., 195 Mass. 307, 308, 81 N. E. 191, 9 L. R. A. (N. S.) 873. That a proper place should be provided by the employer wherein to keep the clothes temporarily is reasonable, and that this place cannot always be in direct line between the place of work and the gate of the premises is obvious. If the door of the receptacle is locked—perhaps for the safety of the employé's property—or if it sticks, or if some time is otherwise spent by the workman in looking for his clothes, this also is an incident of his employment, and the employment ordinarily continues during the operation. The distinction between employment and nonemployment is the same, whether it works in favor of the master or of the servant. In the case at bar the plaintiff is contending that his employment ceased before the accident; but in the next case the employé may be driven to maintain that his employment is prolonged to his final departure from the premises. This happened in Boyle v. Columbian Fire Proofing Company, 182 Mass. 93, 102, 64 N. E. 726, 730, a suit brought under the employer's liability act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1909, p. 1171]). The plaintiff was injured while going down in an elevator at the noon hour to get his dinner, and the court said:

"Going from the particular part of the building where he has been set to work, to eat dinner, is an incident of a workman's employment who is engaged by the day in erecting the building in question, at least so long as he has not finished passing over or through the building to get his dinner."

In Rosenbaum v. St. Paul R. R., 38 Minn. 173, 174, 36 N. W. 447, 8 Am. St. Rep. 653, the plaintiff contended that he remained an employé while riding back on the defendant's construction train, after hours, to get the coat which he had left at the place of his work. The contention was sustained. To the same general effect are Arkadelphia Co. v. Smith, 78 Ark. 505, 95 S. W. 800; Brydon v. Stewart, 2 Macq. 30. Many of those cases in which it was held that the plaintiff was not in the defendant's employ at the time of the accident yet recognize that employment may continue after actual work has ceased. Thus in Fletcher v. Baltimore & Potomac R. R., 168 U. S. 135, 138, 18 Sup. Ct. 35, 36, 42 L. Ed. 411, the Supreme Court observed:

"The plaintiff at the time of the accident had finished his employment for the day, and had left the workshop and grounds of the defendant, and was moving along a public highway in the city with the same rights as any other citizen would have."

To much the same effect are Baird v. Pettit, 70 Pa. 477, 483; Whitney v. N. Y., N. H. & H. R. R., 102 Fed. 850, 855, 43 C. C. A. 19, 50 L. R. A. 615.

It has often been held that a master is liable for acts of his servant done in the general course of employment, although done for the servant's individual benefit and not for that of the master. Ritchie v. Waller, 63 Conn. 155, 28 Atl. 29, 27 L. R. A. 161, 38 Am. St. Rep. 361. In the case at bar, as has been said, the plaintiff's act in seeking his coat may well be deemed done for his master's benefit as well as for his own, inasmuch as the master's interest may have required the plaintiff to work without his coat. The ruling of the Circuit Court in the case at bar appears to have been based upon Packet Co. v. McCue, 17 Wall. 508, 21 L. Ed. 705; but upon careful consideration of that case, and of the comment made thereon in Randall v. Baltimore & Ohio R. R., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003, we are satisfied that the Supreme Court deemed the circumstances there to be exceptional, both in the nature of the plaintiff's employment and in the manner of its termination.

In the case at bar there was no evidence which warranted the jury in finding that, at the time of the accident, the plaintiff had quitted the defendants' employ. The learned judge was therefore in error in leaving the question of employment to the jury.

The judgment of the Circuit Court is reversed, the verdict set aside, and the case remanded to that court for further proceedings not inconsistent with the opinion passed down the 25th day of February, 1910; and the plaintiffs in error recover their costs of appeal.