### SOUTHERN RY. CO. v. TAYLOR.

(Court of Appeals of District of Columbia. Submitted October 8, 1926. Decided December 6, 1926.)

No. 4421.

1. **Master and servant ⊕196—"Fellow servants" are those engaged in common pursuit, under control of same master.**

"Fellow servants," who assume the risk of each other's negligence, may be defined as employees engaged in the same common pursuit, under the same general control, serving the same master, working under the same management, engaged in the same general business, and deriving authority and compensation from the same common source.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fellow Servant.]

2. **Master and servant ⊕201(3)—Notwithstanding fellow-servant doctrine, employer must provide reasonably safe place and tools and reasonably competent employees.**

Fellow-servant doctrine does not excuse employer from duty to provide employees with a reasonably safe place in which to work, reasonably safe tools, appliances, and machinery, and reasonably competent employees.

3. **Master and servant ⊕189(1)—Master is liable for negligence of agent in charge of separate department.**

In federal courts, the only exception to the fellow-servant doctrine which is recognized is that master is liable for negligence of his agent in charge of a separate department of the business, through whose negligence an employee in the department is injured; such agent being a vice principal.

4. **Master and servant ⊕188—Federal courts do not recognize superior servant doctrine, holding master liable for negligence of superintendent, manager, or foreman.**

The superior servant doctrine as an exception to the fellow-servant rule, rendering master liable for negligence of any person engaged as a superintendent, manager, foreman, or other person in charge or control of works, plants, or machinery, is not recognized in federal courts.

5. **Master and servant ⊕197—Operator of passenger elevator held fellow servant with engineer doing work in connection with operation of elevator.**

Plaintiff, operator of passenger elevator in defendant's office building, *held* a fellow servant with engineer, called to perform a mechanical piece of work in connection with the operation of the elevator, and not entitled to recover for injuries from his negligence.

6. **Master and servant ⊕180(2, 3)—Railroad, owning office building and operating passenger elevator, held not "common carrier," within statute abolishing fellow-servant doctrine (Employers' Liability Act June 11, 1906; Employers' Liability Act April 22, 1908, as amended by Act April 5, 1910 [Comp. St. §§ 8657–8665]).**

Railway company, owning office building in which passenger elevator was operated, *held* not a "common carrier," within Employers' Liability Act June 11, 1906 (34 Stat. 232), and Employers' Liability Act April 22, 1908, as amended by Act April 5, 1910 (Comp. St. §§ 8657–8665), abolishing fellow-servant rule as applied to common carriers engaged in commerce.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Common Carrier.]

7. **Master and servant ⊕180(2, 3)—Statute abolishing fellow-servant doctrine as to common carriers held to relate solely to commerce (Employers' Liability Act, June 11, 1906).**

Employers' Liability Act June 11, 1906 (34 Stat. 232), abolishing fellow-servant doctrine as applied to common carriers "engaged in trade or commerce," must be interpreted as relating solely to commerce.

**8. Carriers ⚖⇒4—"Common carrier" is one who by occupation or calling carries chattels for all persons who may employ and remunerate him.**

A "common carrier" is one whose business, occupation, or regular calling is to carry chattels for all persons who may choose to employ and remunerate him.

**9. Carriers ⚖⇒4—Commerce ⚖⇒47—Elevator operator is not "common carrier," nor engaged in commerce.**

The operator of an elevator in an office building is not a "common carrier," nor is he engaged in commerce.

**10. Carriers ⚖⇒280(4)—Elevator operator is required to exercise same care as common carrier for safety of passengers.**

Operator of elevator in public building is chargeable with the same high degree of care for the safety of passengers as is a common carrier.

Robb, Associate Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Action by Louise Taylor against the Southern Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

F. J. Hogan and E. L. Jones, both of Washington, D. C., for appellant.

W. H. De Lacy and W. C. De Lacy, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from a verdict and judgment awarding damages to appellee, plaintiff below, against the Southern Railway Company, for personal injuries sustained while operating a passenger elevator in the office building of defendant company in the city of Washington.

The evidence discloses that the elevator, while being operated by plaintiff, stuck at or near the eighth floor of the building. Being unable to move it, she summoned the engineer, a Mr. Smith, who went into the penthouse to release it. When the elevator was released, it suddenly dropped to a little below the third floor, where plaintiff was found in an unconscious condition; hence this suit for damages.

The declaration is in two counts. The first count charges defendant company with negligently maintaining a defective elevator, the defects of which, by the use of reasonable care, it could have discovered, but which were unknown to plaintiff. The second count charges that the accident was occasioned by the engineer releasing the elevator in a careless and negligent manner, thereby causing plaintiff's injury.

We think it unnecessary to review the testimony in detail, since the case can be disposed of upon a single question. At the conclusion of the evidence, counsel for defendant moved the court for a directed verdict on both counts of the declaration, stating a number of grounds in support of their motion, among which: "That it would be error for the court to charge the jury that they could find for the plaintiff if they believed that Mr. Smith operated the elevator from the penthouse and negligently caused it to go down suddenly."

During the argument of the motion, the court, among other things, said: "If the person in the penthouse, Mr. Smith, whose duty it was to put the elevator in running order and give the directions about it, sent it down while the elevator operator, the plaintiff, was in the car, and not exercising any control over it, and did that negligently, I think there is a case to go to the jury under the second count. * * * I really do not see any evidence that would justify the submission of the case to the jury upon the allegation that the elevator was out of order or repair, or in itself insufficient or defective; but I do think the plaintiff is entitled to go to the jury on this averment on the second count with respect to the car being controlled from the penthouse by Mr. Smith, and by him negligently dropped or caused to drop down suddenly. I think I should have to overrule the motion for that reason."

The court, without objection or exception by counsel for plaintiff, directed a verdict for the defendant on the first count of the declaration, and submitted the case to the jury on the sole question of the liability of the defendant for the careless and negligent manner in which the engineer, Smith, released and operated the car from the penthouse. The material part of the court's instruction was as follows:

"Plaintiff avers that on the occasion in question, when her car was near the eighth floor, it stuck and she could not move it, whereupon she got word to the employee of defendant, Mr. Smith, whose duty it was to attend to such matters, and that he went into the penthouse and told her to go down, but that, before she was able to do anything herself toward moving her car down, the car itself went down, and that this accident happened as the result of its suddenly going down. She says that it was done negligently by the man in the penthouse; that he negli-

gently caused the car to drop and descend. The company was represented in that respect by Mr. Smith, and it was the duty of the company, through Mr. Smith, to exercise reasonable care and prudence with respect to the matter; that is, the matter of releasing the car and putting it in condition to go down."

The position thus assumed by the learned trial justice resolves the case to the single question whether Smith occupied the relation of fellow servant to plaintiff. If he did, the judgment is wrong, and must be reversed.

It is clear from the foregoing instruction that the court below ignored entirely the question of fellow servant, and regarded Smith as such an agent of the corporation as to remove him from the status of fellow service with the plaintiff. The fellow-servant doctrine, as applied at common law, is not easily defined, nor are the decisions in this country in accord as to its application. In many of the states, by statute and judicial decision, the common-law rule has been very greatly modified, but in the federal courts it has been strictly adhered to.

[1] From the authorities, fellow servants may be defined as employees engaged in the same common pursuit, under the same general control, serving the same master, working under the same management, engaged in the same general business, and deriving authority and compensation from the same common source. Employees working under these circumstances are fellow servants, and as such assume the risk of each other's negligence.

[2] While it is a general rule that employees entering the service of a common master become engaged in a common service and are fellow servants, there are duties imposed upon the master which he cannot ignore and still claim immunity under the fellow-servant doctrine; for example, he must provide his employees with a reasonably safe place in which to work and reasonably safe tools, appliances, and machinery for the accomplishment of the work. He must employ reasonably competent employees to perform the respective duties to which they are assigned, and in some of the states it has been held that the master is obliged to adopt and promulgate safe and proper rules for the conduct of the business.

[3] It is generally held, however, that the master is liable for the negligence of his agent in charge of a separate department of the business through whose negligence an employee in the department is injured. In those cases it has been held that such an agent is a vice principal, and that his negligence is the negligence of the master; hence a servant who occupies a subordinate position in the department, and is injured through the negligence of the agent, may recover from the master for the injuries thus sustained. But employees in separate departments of a business should not be confused with employees who may be engaged merely in different occupations.

In Baltimore & Ohio R. Co. v. Baugh, 149 U. S. 368, 383, 13 S. Ct. 914, 920 (37 L. Ed. 772) Mr. Justice Brewer, illustrating the meaning of the expression "different branches or departments of service," stated that "between the law department of a railway corporation and the operating department there is a natural and distinct separation, one which makes the two departments like two independent kinds of business, in which the one employer and master is engaged. So oftentimes there is in the affairs of such corporation what may be called a manufacturing or repair department, and another strictly operating department; these two departments are, in their relation to each other, as distinct and separate as though the work of each was carried on by a separate corporation. And from this natural separation flows the rule that he who is placed in charge of such separate branch of the service, who alone superintends and has the control of it, is as to it in the place of the master."

The fellow-servant doctrine was originally annunciated on the theory of the existence of an implied contract of employment, calculated to make servants in a common employment watchful of each other, and thereby promote carefulness in the performance of their duties. While it thus provides for the safety and welfare, it in effect works no injury to the servant, since he is free to enter or refuse to enter into the service, and is charged with knowledge of its hazards, and possessed of the power and right to demand such wages as he may deem compensatory.

In a few states there is recognized what is called the "consociation doctrine," limiting the fellow-servant rule to those directly cooperating at the time of the injury in the particular business in which they are at the time engaged, and whose duties bring them into such juxtaposition that one would be enabled to observe the negligence of his fellows, or the usual duties are of such a nature as to bring them into habitual association, so that an opportunity may be afforded of exercising an influence upon each other promotive of proper caution. This rule has been

repudiated by the federal courts and by the courts of most of the states.

[4] What is known as the "superior servant doctrine" had been adopted by judicial decision in some of the states before the enactment of statutes on the subject. It is, however, now largely controlled by statutory enactment, and relates more particularly to employees engaged in hazardous occupations. These statutes render the master liable for "the negligence of any person engaged as superintendent, manager, foreman, or any other person in charge or control of works, plants, or machinery, or by the negligence of any person in charge of or directing the particular work in which the employee was engaged at the time of the injury or death." 29 Corpus Juris, 645. This doctrine, however, is not recognized in the federal courts, and there is no statute on the subject.

In Chicago, Milwaukee & St. Paul R. Co. v. Ross, 112 U. S. 377, 5 S. Ct. 184, 28 L. Ed. 787, the company was held liable in damages to a train employee for injuries received as the result of the negligence of the conductor in charge of the train, on the theory that a conductor has the right to command the movement of his train and control all persons employed on it. It was held that in performing those duties he represented the company, and did not bear the relation of fellow servant to the engineer and other employees on the train. This decision, however, was held in New England R. Co. v. Conroy, 175 U. S. 323, 20 S. Ct. 85, 44 L. Ed. 181, to have been expressly overruled in Baltimore & Ohio R. Co. v. Baugh, 149 U. S. 368, 13 S. Ct. 914, 37 L. Ed. 772, indicating clearly the intention of the court to adhere strictly to the single exception—the doctrine of separate departments—and its refusal to follow the rule of superior service. Broadly speaking, in order to form an exception to the general law of nonliability, the servant or agent whose negligence caused the injury must be, as was held in the Baugh Case, one who is clothed with the control and management of a distinct department, and not a mere separate piece of work in one of the branches of service in the department.

With the conclusion that the injured servant and the one inflicting the injury need not be engaged in the same particular work, or rank the same in grade and pay, provided that their work relates to the master's business in a given department, we now come to a consideration of some of the concrete cases. In Farwell v. Boston & Worcester R. Co., 4 Metc. (Mass.) 49, 38 Am. Dec. 339; Chief Justice Shaw, in an opinion delivered in 1842, covered the law, applicable to the common-law master and servant doctrine, so completely that it has been regarded ever since as the leading case on the subject in this country, quoted and cited with approval in numerous decisions of the Supreme Court of the United States.

In that case the injury was inflicted upon a railroad engineer through the negligence of a switchman in failing to properly adjust the switch. The court defined the common-law rule as resting upon an implied contract between the master and servant which exempts the master from liability. Where the accident occurs in the general course of the master's business, between employees engaged in conducting a particular department of the business, and where no negligence can be imputed to the master through his failure to furnish a reasonably safe place in which to work and reasonably safe tools and appliances with which to work, the master is not liable. The general rule, as applied to the case of the engineer and the switch tender, was stated by the learned Chief Justice as follows:

"We are of opinion that these considerations apply strongly to the case in question. Where several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends much on the care and skill with which each other shall perform his appropriate duty, each is an observer of the conduct of the others, can give notice of any misconduct, incapacity or neglect of duty, and leave the service, if the common employer will not take such precautions, and employ such agents as the safety of the whole party may require. By these means, the safety of each will be much more effectually secured, than could be done by a resort to the common employer for indemnity in case of loss by the negligence of each other. Regarding it in this light, it is the ordinary case of one sustaining an injury in the course of his own employment, in which he must bear the loss himself, or seek his remedy, if he have any, against the actual wrongdoer."

In Wolcott v. Studebaker et al. (C. C.) 34 F. 8, the court was considering an elevator case. An elevator boy, an engineer, and plaintiff, were in the employ of the defendant company. The duty was imposed on the engineer of furnishing the power for the movement of the elevator. The plaintiff, an employee of the defendant, was in the habit of going on the elevator from the first floor to the third floor of the factory, where he worked. It was a custom of the engineer

each morning to test out the elevator by a trial trip with nobody on it. The morning of the accident, plaintiff came a little early, before the arrival of the elevator boy, and stepped into the elevator. The engineer, in another part of the building, not aware of the presence of any one in the elevator, started it, and in the course of the operation of the elevator plaintiff was injured.

In sustaining the application of the fellow-servant doctrine, the court said: "It is my conviction that the plaintiff in the case at bar has made a case in which, if there was negligence at all, it was negligence on the part of the engineer, who controlled the motive power of this elevator, and of the elevator boy, one or both, and that they were the fellow servants of the other employés, including the plaintiff, who were in the habit of riding in the elevator to and from their work. All were in the service of the defendants. The elevator was used in carrying on the business in which all were engaged. It is like the case of the engineer, who is running an engine connected with a train, and the other employees, who are in service on the same train. Here was an apparatus which was put into the defendants' building for the purpose of enabling the employees to prosecute the work which they were employed to do. They were engaged in different rooms, and different stories of the building. They went to and from their work by means of this elevator. Here was a man in the basement, who controlled the use of the steam power by which the elevator was moved up and down. The elevator was one of the instruments by which the work of all was being carried on. The engineer had not charge of a department. He was simply an instrumentality controlling the use of the motive power, and was certainly a fellow servant with the plaintiff as was the elevator boy."

The court in this case relied chiefly on the decision in the case of Randall v. Railroad Co., 109 U. S. 478, 3 S. Ct. 322, 27 L. Ed. 1003, where the court held that a brakeman working a switch for his train on one track in a railroad yard was a fellow servant with the engineer of another train of the same corporation upon an adjacent track, and that the corporation was not liable for an injury inflicted upon the brakeman by the negligence of the engineer in driving his engine too fast. In that case the brakeman, working a switch for a train on which he was employed, had no connection with the operation of the engine by the engineer on an adjoining track; but the court held that the

two men engaged in their respective employments were fellow servants, "according to the very great preponderance of judicial authority in this country, as well as the uniform course of decision in the House of Lords, and in the English and Irish courts."

Defining the conditions which brought the engineer and brakeman into the relation of fellow servants, Mr. Justice Gray, speaking for the court, said: "They are employed and paid by the same master. The duties of the two bring them to work at the same place at the same time, so that the negligence of the one in doing his work may injure the other in doing his work. Their separate services have an immediate common object, the moving of the trains. Neither works under the orders or control of the other. Each, by entering into his contract of service, takes the risk of the negligence of the other in performing his service; and neither can maintain an action for an injury caused by such negligence, against the corporation, their common master."

In the recent case of Bentler v. Grand Trunk Ry. Co., 224 U. S. 85, 32 S. Ct. 402, 56 L. Ed. 679, the injured employee was working in the repair yard of the railroad. A switching crew, operating an engine, ran a car, needing repair, from the general tracks into the repair yard, and by their negligence the injury was inflicted. Upon this statement of facts, the question was certified to the Supreme Court, whether they were fellow servants within the rule that would exempt the railroad company from liability? Answering this question, Mr. Justice Holmes, speaking for the court, said: "The doctrine as to fellow servants may be, as it has been called, a bad exception to a bad rule; but it is established, and it is not open to courts to do away with it upon their personal notions of what is expedient. So it has been decided that in cases tried in the United States courts we must follow our own understanding of the common law when no settled rule of property intervenes. * * * The precedents in this court carry the doctrine as far as it is necessary to carry it in this case to show that the two persons concerned were engaged in a common employment. No testimony can shake the obvious fact that the character of their respective occupations brought the people engaged in them into necessary and frequent contact, although they may have had no personal relations. Every time that a car was to be repaired it had to be switched into the repair yard. There is no room for the exception to the rule that exists where the negligence consists

in the undisclosed failure to furnish a safe place to work in, an exception that perhaps has been pushed to an extreme in the effort to limit the rule. * * * The head of the switching crew and the deceased were as clearly fellow servants as the section hand and engineer in Texas & Pacific R. Co. v. Bourman, 212 U. S. 536 [29 S. Ct. 319, 53 L. Ed. 641]; Northern Pacific R. R. Co. v. Hambly, 154 U. S. 349 [14 S. Ct. 983, 38 L. Ed. 1009]. It may be that in the state court the question would be left to the jury. Gathman v. Chicago, 236 Ill. 9 [86 N. E. 152, 19 L. R. A. (N. S.) 1178, 15 Ann. Cas. 830]; Indiana, Illinois & Iowa R. Co. v. Otstot, 212 Ill. 429 [72 N. E. 387]. But whether certain facts do or do not constitute a ground of liability is in its nature a question of law. To leave it uncertain is to leave the law uncertain. If the law is bad, the Legislature, not juries, must make a change. We answer the certificate, Yes."

[5] It is clear, from the foregoing review of the law, that Smith and the plaintiff were employed by the railway company to perform service in its office building; that the separate services which they performed had an immediate common object, namely, the efficient operation of the elevator; that neither of these employees worked under the orders or control of the other; that the duty Smith was called upon to perform was a mere mechanical piece of work in connection with the operation of the elevator; that it was part of his duties as engineer about the place, and in no sense amounted to work performed in a different and separate department of the service from that performed by plaintiff. Clearly plaintiff and Smith were fellow servants, and, if the common-law rule still prevails in this District, plaintiff cannot recover.

[6] But it is urged that defendant company, in the operation of the elevator in question, is a common carrier, and that, as to it, the fellow-servant doctrine has been abolished by statute in this District. The Employers' Liability Act of June 11, 1906, 34 Stat. 232, abolished the fellow-servant rule as applied to common carriers engaged in commerce. The constitutionality of this act, as applied to the District of Columbia and the territories, was sustained in El Paso & N. E. Ry. Co. v. Gutierrez, 215 U. S. 87, 30 S. Ct. 21, 54 L. Ed. 106. Owing to constitutional defects in the 1906 act, as applied to common carriers in the states, Congress passed the Act of April 22, 1908, 35 Stat. 65, as amended by the Act of April 5, 1910, 36 Stat. 291 (Comp. St. §§ 8657–8665), regulating the liability of common carriers by railroad. The constitutionality of these acts was sustained in Second Employers' Liability Cases, 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44.

The original act (34 Stat. 232), applicable in the District of Columbia, provides "that every common carrier engaged in trade or commerce in the District of Columbia, or in any territory of the United States, or between the several states, or between any territory and another, or between any territory or territories and any state or states, or the District of Columbia, or with foreign nations, or between the District of Columbia and any state or states or foreign nations, shall be liable to any of its employees, * * * for all damages which may result from the negligence of any of its officers, agents, or employees, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, ways, or works." Section 1.

[7] Considering this statute in its broadest aspect, it must be interpreted as relating solely to commerce. That was the subject-matter that Congress had under consideration, and which prompted the enactment of this legislation. Its scope from any standpoint must be limited to common carriers engaged in commerce. The additional words "or trade" add nothing to the scope of the act. They can refer only to trade in connection with commerce. It would lead to a ridiculous interpretation to attempt to apply this act to all persons engaged in trade, under the broad acceptation of the term, in the District of Columbia. This statute, abolishing the fellow-servant rule, in derogation of the common law, is limited, we think, by its terms and the general object Congress had in mind its enactment, to common carriers engaged in commerce.

[8, 9] Bouvier defines a common carrier as "one whose business, occupation, or regular calling it is to carry chattels for all persons who may choose to employ and remunerate him." This of course applies, not only to the carrying of chattels, but to the carrying of passengers for hire. It will be observed, however, that a common carrier is required to extend its services to "all persons who may choose to employ and remunerate him." In other words, a common carrier is a public utility, a public servant, required to extend its services to all who request it, providing they place themselves within the lawful rules and regulations governing its use and operation. It logically follows that the operator of an elevator in an office building is not a

common carrier, nor is he engaged in commerce. He is not required to carry all who may demand passage. The matter of extending service is entirely within his control. The elevator is merely an instrumentality furnished for the convenience of those who occupy and use the building, at all times within the control of the owner.

The courts in sustaining the act of 1906, as constitutional within the District of Columbia and the territories, clearly intimated that they considered it as an act relating exclusively to commerce. In Hyde v. Southern Railroad Co., 31 App. D. C. 466, 470, referring to the opinion of the Supreme Court holding the act void as to carriers engaged in business in the states, the court said: "As said therein, the power of Congress in the District of Columbia is plenary, and extends to the regulation of all commerce of whatsoever nature that may be carried on within its boundaries, and the act expressly applies to all employees of common carriers in said District without regard to the character of the commerce engaged in." The Supreme Court in the El Paso Case, 215 U. S. at page 96 (30 S. Ct. 24), treating the act as relating solely to commerce, said: "Coming to consider the statute in the light of the accepted rules of construction, we are of opinion that the provisions with reference to interstate commerce, which were declared unconstitutional for the reasons stated, are entirely separable from and in no wise dependent upon the provisions of the act regulating commerce within the District of Columbia and the territories."

Thus it will be observed that the act is treated solely as one relating to common carriers engaged in commerce, and as an "act regulating commerce within the District of Columbia and the territories." Unquestionably Congress, in the exercise of its plenary power over the District of Columbia, might abolish the fellow-servant rule, and thereby include all lines of trade and business; but that is not what was done. Congress was dealing with a particular subject, and the provisions of the act, unless it manifestly appears to the contrary, must be so construed that its interpretation will be confined strictly to the subject-matter under consideration. [10] It is undoubtedly true that the same high degree of care is required for the safety of passengers by the operator of an elevator in a public building as is imposed upon a common carrier. In Munsey v. Webb, 37 App. D. C. 185, an elevator case, we said: "It is important at the outset to consider the duty which defendant owes to persons entering his

building for legitimate purposes, and using the elevators placed therein for their accommodation. The building in question is a business block devoted to public use. The elevators are an essential part of the building, and persons using them do so by the invitation of the defendant. It follows, therefore, that defendant in this instance is a carrier engaged in the transportation of passengers. While not, in the strict sense, an insurer, he is required to exercise the highest degree of diligence and care for the safety of persons using his elevator as agencies of transportation. It is doubtful if there is any known method of conveyance in which a higher degree of care is required in its construction and operation than that of an elevator."

In Mitchell v. Marker (C. C. A.) 62 F. 139, 25 L. R. A. 33, where a passenger in an elevator in a public building was injured by the alleged negligence of the operator, Mr. Justice Lurton, speaking for the court, said: "We see no distinction in principle between the degree of care required from a carrier of passengers horizontally, by means of railway cars or stagecoaches, and one who carries them vertically, by means of a passenger elevator. The degree of care required from carriers by railway or stagecoach is the highest degree. Neither is an insurer, but, in regard to each, care short of the highest degree becomes, not ordinary care, but absolute negligence."

In these cases the courts were considering the degree of care required of the operator of an elevator toward his passengers, as compared with the degree of care imposed upon a common carrier under similar circumstances. This comparison is induced by reason of the similarity of the duty each owes to those under his care, not to the similarity of service or the instrumentality employed in rendering the service. A street car, for example, and an elevator, are both instrumentalities for the carrying of passengers, and the duty of exercising the highest degree of care in their operation for the safety of passengers is equally imposed. It, however, by no means follows that, because a street car is a common carrier, an elevator is also a common carrier. The distinction is clear. In the first instance, we are dealing with a public utility, operated for the accommodation of the public generally, required to give service to all who apply, bringing themselves within its lawful rules and regulations. In the latter instance, we are not dealing with a public utility, but with a private instrumentality, operated to carry such persons in and

about the building as to whom the owner may see fit to extend the accommodation.

We have not overlooked the decisions in certain state cases. Orcutt v. Century Building Co., 201 Mo. 424, 99 S. W. 1062, 8 L. R. A. (N. S.) 929. Springer v. Ford, 189 Ill. 430, 59 N. E. 953, 52 L. R. A. 930, 8 Am. St. Rep. 464, in which the operator of an elevator in an office building has been referred to as a common carrier of passengers; but those cases arose from injuries inflicted upon passengers, and the courts were considering the degree of care due in such a case, and were applying the oft-repeated comparison, in that respect, between the operator of an elevator and a common carrier; hence the statement that the operator of the elevator is a common carrier was unnecessary to the decisions.

In Seaver v. Bradley, 179 Mass. 330, 60 N. E. 795, 88 Am. St. Rep. 384, where the question directly involved was whether an elevator in an office building is a common carrier of passengers, Chief Justice Holmes, speaking for the court, said: "It also goes back to the old principles concerning common callings. Carriers not exercising a common calling as such are not common carriers, whatever their liabilities may be. But the defendant did not exercise the common calling of a carrier, as sufficiently appears from the fact that he might have shut the elevator door in the plaintiff's face, and arbitrarily have refused to carry him, without incurring any liability to him. Apart from that consideration, manifestly it would be contrary to the ordinary usages of English speech to describe by such words the maintaining of an elevator as an inducement to tenants to occupy rooms which the defendant wished to let." This clearly points out the distinctive elements between a public agency, exercising a common calling, a common carrier, and a mere instrumentality used by the owner of a building for the private accommodation of its occupants.

The conclusion is irresistible that defendant, in the operation of its elevator in its office building, is not affected by the statute abolishing the fellow-servant doctrine, as applied to common carriers engaged in commerce or trade in the District of Columbia. In reaching our decision, it is not a relevant matter of concern that the general business of defendant company is that of a common carrier, and that its office building is used as the center from which the operation of its extensive system of railroads is directed and controlled.

The judgment is reversed, with costs, and the cause is remanded for further proceedings, not inconsistent with this opinion.

ROBB, Associate Justice (dissenting). I concur in the ruling that Smith was a fellow servant of the plaintiff, but I am unable to concur in the ruling that the defendant was not a common carrier, within the meaning of the First Employers' Liability Act of June 11, 1906, 34 Stat. 232.

As I read the majority opinion, it means that the defendant was a common carrier of elevator passengers; in other words, that as to passengers it owed the duty of a common carrier, but sustained no such duty as to elevator operators.

In Hyde v. Southern R. Co., 31 App. D. C. 466, where the constitutionality of the above Employers' Liability Act was sustained, Mr. Chief Justice Shepard, speaking for the court, after referring to the decision of the Supreme Court in the First Employers' Liability Cases, 207 U. S. 463, 28 S. Ct. 141, 52 L. Ed. 297, said: "As said therein, the power of Congress in the District of Columbia is plenary, and extends to the regulation of all commerce of whatsoever nature that may be carried on within its boundaries, and the act expressly applies to all employees of common carriers in said District without regard to the character of the commerce engaged in." This opinion was characterized by the Supreme Court in El Paso & N. E. R. Co. v. Gutierrez, 215 U. S. 87, 30 S. Ct. 21, 54 L. Ed. 106, as "well considered."

In Munsey v. Webb, 37 App. D. C. 185, this court said: "The elevators are an essential part of the building, and persons using them do so by the invitation of the defendant. It follows, therefore, that defendant in this instance is a carrier engaged in the transportation of passengers."

In Springer v. Ford, 169 Ill. 430, 59 N. E. 953, 52 L. R. A. 930, 8 Am. St. Rep. 464, it was ruled that "the law is well settled that persons operating elevators in buildings for the purpose of carrying persons from one story to another are common carriers of passengers." To the same effect are Orcutt v. Century Bldg. Co., 201 Mo. 424, 99 S. W. 1062, 8 L. R. A. (N. S.) 929; Goodsell v. Taylor, 41 Minn. 207, 42 N. W. 873, 4 L. R. A. 673, 16 Am. St. Rep. 700; Treadwell v. Whittier, 80 Cal. 575, 22 P. 266, 5 L. R. A. 498, 13 Am. St. Rep. 175; Ky. Hotel Co. v. Camp, 97 Ky. 424, 30 S. W. 1010; Tousey v. Roberts, 114 N. Y. 312, 21 N. E. 399, 11 Am. St. Rep. 655; and So. Bldg. Assoc. v. Lawson, 97 Tenn. 367, 37 S. W. 86, 56 Am. St. Rep. 804.

The authority of Congress in the District

of Columbia being plenary, and this being a remedial statute "dealing * * * with trade or commerce in the District" (El Paso & N. E. R. Co. v. Gutierrez, 215 U. S. 87, 30 S. Ct. 21, 54 L. Ed. 106), I think it should be given an interpretation in harmony with its obvious scope and purpose.