## WOODWARD & LOTHROP v. LINEBERRY.
### No. 5063.

Court of Appeals of District of Columbia.

Argued March 9, 1931.

Decided May 4, 1931.

G. Bowdoin Craighill, Chas. B. Tebbs, and Frank H. Myers, all of Washington, D. C., for appellant.

Richard L. Merrick, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal from a judgment entered in the Supreme Court of the District of Columbia in which the appellant was defendant and the appellee plaintiff. For convenience, the parties will hereafter be spoken of in the positions they occupied below.

Plaintiff was employed at the time of her injury as a saleswoman in defendant's store in the city of Washington. Her working hours were from 9:15 in the morning to 6:00 in the evening, with a break of 45 minutes, beginning at 2:00 o'clock, for luncheon. On the day of the accident (which was Friday and bargain day) at the recess hour, she met by engagement at her regular place of work on the fifth floor a friend with whom she purposed doing "some shopping" both in and out of the store, and, with this object in view, they together took the elevator from the fifth to the fourth floor. In the descent, through the carelessness of the operator of the car, plaintiff was thrown against the lattice door of the elevator, and received the injuries complained of.

At the close of plaintiff's evidence, defendant moved for a directed verdict on the ground that at the time of the injury plaintiff was a fellow servant of the elevator operator. The trial court denied the motion, and, on submission of the whole case to the jury, there was a verdict and judgment for the plaintiff.

The appeal is from the refusal of the trial court to direct a verdict for the defendant.

While counsel for appellee cite a number of state cases which they suggest establish the rule that an employee such as plaintiff was and the operator of the elevator in appellant's store are not fellow servants, we hardly think this position can now be seriously urged, for the Supreme Court, as far back as B. & O. R. Co. v. Baugh, 149 U. S. 368, 13 S. Ct. 914, 37 L. Ed. 772, decided to the contrary. See, also, Collins v. Danforth Co., 36 App. D. C. 592, 599, in which we said: "The general rule seems to be that all employees of a corporation, except heads of separate departments, are fellow servants."

But a more difficult question arises in the position of appellee that, without regard to this, the facts shown here take the case out of the rule because at the time of the injury plaintiff had suspended her duties as saleswoman, and was engaged during the lunch hour in going from one part of the store to another on her own affairs. The decision therefore turns upon the question whether a temporary stoppage of work, during the period of the workday, for luncheon, or the like, will destroy or interrupt the relationship of master and servant. Precisely this question was before the Supreme Judicial Court of Massachusetts in the case of White v. E. T. Slattery Co., 236 Mass. 28, 127 N. E. 597, 599, and it was there decided it would not. There the plaintiff was employed, as here, as a saleswoman in a store, and there, as here, she had a regular lunch hour to do with as she saw fit, and there, as here, she was injured through the negligence of the elevator operator. At the time of her injury, she was leaving the store during her lunch hour for the purpose of going out to purchase theater tickets for her personal use. In this state of facts, the Massachusetts court said: "The plaintiff was leaving the store of her employer with the purpose of doing an errand on her own account having no relation to her employment. That fact is of no consequence under these circumstances. She was doing it on her own time and not on her employer's time. She was in this particular in the same condition as she would have been if leaving the store at the end of her labor for the day. She had a right under the terms of her employment to go out at the lunch hour on her own affairs. She was as much within the scope of her employment as were any of the employees in the cases cited where they have been held within the protection of the act."

And so in Archibald v. Workmen's Compensation Commission, 77 W. Va. 448, 87 S. E. 791, 792, L. R. A. 1916D, 1013, it was said, in a case involving substantially similar facts: "Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the

performance thereof is deemed to have arisen out of the employment."

To the same effect was the decision in Martin v. Metropolitan Life Insurance Co., 197 App. Div. 382, 189 N. Y. S. 467, which was the case of an employee injured in an elevator as she was leaving the building of her employer while using her lunch hour to go outside to buy a birthday present for her sister.

We find ourselves in accord with the reasoning and the conclusion reached in the cases cited. As already indicated, we think there can be no question that plaintiff and the elevator operator were fellow servants, and, there being here no claim that defendant failed in any respect to exercise reasonable care in the selection of the operator, we think it follows that plaintiff assumed as an incident of the employment the risk of injury from his negligence, and likewise we think this assumption of risk continued while she was at her work in the store, and, since the use of the elevator in going to and from the fifth floor was customary and habitual, we likewise think the assumption of risk continued while she was going to and coming from her designated place of work in the store. If the injury had occurred through the negligence of the operator of the elevator after she had finished her duties of the day and was leaving her place of work to go home, or for that matter to go shopping elsewhere, the defendant, we think, would not have been answerable in damages, and we cannot discover any difference in principle between such an event, in its legal effect upon the respective rights of the parties, and the one here in suit. Instead of having done her whole day's work, plaintiff had performed half of it. She was then on the fifth floor because it was her place of work, though it was also the designated meeting ground with her friend with whom she intended to "do some shopping." Her descent from the fifth floor was due to the fact of her employment there, though the purpose of the descent was personal. As she was following the usual and customary course of descent from her place of work, and, in so doing, was using a facility provided for that purpose by her employer, it follows, we think, that her presence at the particular time and place of her injury was by reason of her employment, and therefore necessarily within the scope of the employment.

Cases of a nature similar to those cited above may be multiplied indefinitely, but we content ourselves on this subject by referring to the notes in L. R. A. 1916A, pages 232 and 318, in which will be found a long list of cases, both in our courts and in the English courts, holding that injuries received during lunch hours on the property of the employer, whether the servant then be engaged on his own or in his master's work, are to be considered incidental to and arising out of and in the course of the employment.

It is quite true that in most of the cases cited, both English and American, the injured servant was invoking his rights under compensation statutes covering injuries "arising out of and in the course of the employment," but these statutes do not of themselves change or enlarge the relationship of the parties, though they do provide relief to the servant where none existed before. Obviously, therefore, we think, it would be unfair to adopt a wholly different and contradictory rule of relationship in determining the liability of the employer in a jurisdiction in which no compensation law applies—as regrettably was the case in the District of Columbia when the injury here complained of occurred—for, as was said by Judge Lowell, for the First Circuit Court of Appeals, in Willmarth v. Cardoza, 176 F. 1, 3, 27 L. R. A. (N. S.) 376: "The distinction between employment and nonemployment is the same, whether it works in favor of the master or of the servant." To say in the one case that, under a statute providing for compensation based upon injury "in the course of the employment," the employee is within its terms, where the injury occurs on the employer's premises, notwithstanding the employee is temporarily—as during the lunch hour or at the close of the day's work—engaged in his own business, and in the other that, in a suit at law against the master, he is not, would be to establish for the employee's benefit a rule of recovery based on the mere happening of the injury, and this we think we may not do. Doubtless it was the recognition of this fact and of the injustice which it sometimes entailed to the injured employee that resulted in the almost universal adoption of the compensation statutes in lieu of the harsher doctrine of the common law, but, until such changes are made effective by the Legislature, we are compelled to follow the law as we find it.

Nor do we think that there is anything in the point made by appellee that appellant in the operation of its elevator was a common carrier, for, while cases may be found in

which the operator of an elevator in an office building is sometimes referred to as a common carrier of passengers, we have heretofore had occasion to examine the question, and to decide the contrary. In Southern Railway Co. v. Taylor, 57 App. D. C. 21, 16 F.(2d) 517, a case which may not in this respect be distinguished from the present, we reached the conclusion that an elevator is merely an instrumentality furnished for the convenience of those who occupy and use the building, and that it is at all times within the control of the owner, who may shut the door and arbitrarily refuse to carry any except those whom he pleases without incurring liability. This freedom from obligation and from liability for refusal to perform a service in itself furnishes the distinction and avoids the possibility of recourse to the doctrine of liability as common carrier.

From this it follows that the refusal of the lower court to give binding instructions was error, for which the case must be reversed, with costs, and the cause remanded to the lower court for a new trial.

Reversed.